NUMBER 13-02-00634-CV

 

                         COURT OF APPEALS

 

                     THIRTEENTH
DISTRICT OF TEXAS

 

                         CORPUS
CHRISTI B EDINBURG

 

UMLIC  VP 
LLC,                                                                               Appellant,

 

                                                             v.

 

T&M SALES AND ENVIRONMENTAL SYSTEMS, INC.,

TOMAS LOZANO, PERLA LOZANO, AND

WALTER M. EZELL,                                                                         Appellees.

 

On appeal from the County Court at
Law Number 2of Cameron County, Texas.

 

                               O P I N I O N

 

               Before Justices Hinojosa,
Rodriguez, and Garza

                                      Opinion
by Justice Hinojosa

 








Appellant, UMLIC VP LLC (AUMLIC@), sued appellees, T&M Sales and Environmental
Systems, Inc. (AT&M@), Tomas and Perla Lozano,[1]
and Walter M. Ezell,[2]
to recover the overdue balance on a note and guaranty agreement.  Appellees asserted the affirmative defense of
wrongful foreclosure and counter-claimed for breach of contract and
negligence.  After a jury found in favor
of appellees, the trial court signed a judgment against UMLIC.  UMLIC challenges the trial court=s judgment by twenty-eight issues.  We reverse and render in part.  The remaining part of the trial court=s judgment is reformed and, as reformed, is affirmed.

                                                   A.  Factual
Background

On July 19, 1989, T&M obtained a business loan
from the Small Business Administration (ASBA@) in the amount of $150,000.  Under the terms of the promissory note,
T&M agreed to pay $1,992 per month for ten years, with a balloon payment
for the unpaid principal being due and payable at the end of the ten-year
period.  The note was secured by a deed of
trust on the land on which T&M was located, a security agreement, and a
guaranty executed by the Lozanos and Ezell in their personal capacities.  The note matured by its own terms on July 19,
1999.  The last payment T&M made on
the note was on November 19, 1998.  The
parties stipulated that as of that date, the remaining principal balance was
$49,602.24.








On October 15, 1999, UMLIC purchased the note, deed
of trust, security agreement, and guaranty from the SBA.  In January 2000, Tomas Lozano contacted UMLIC
and offered to continue making payments on the note in the amount of $1,000 per
month.  UMLIC rejected the offer and
decided to pursue foreclosure.  UMLIC
never informed appellees of its intention to foreclose.

In preparation of the contemplated foreclosure,
UMLIC conducted a title search on the property secured by the deed of
trust.  During the search, UMLIC
discovered that local taxing authorities had foreclosed on the property because
appellees had failed to pay property taxes. 
On February 1, 2000, the sheriff sold the property at a public auction
to Pablo Gonzalez for $10,000.  On June
6, 2000, UMLIC redeemed the property from Gonzalez for $12,500, the amount
Gonzalez had paid for the property plus the statutory twenty-five percent penalty.  Gonzalez then executed a special warranty
deed in favor of UMLIC.

On July 24, 2000, UMLIC sent T&M a notice to
vacate the property.[3]  On August 25, 2000, UMLIC offered to let
T&M redeem the property, on the condition that T&M also pay the balance
due on the note.  On October 9, 2000,
UMLIC filed a petition for forcible detainer in justice court, seeking
possession of the property.  By letter
dated October 20, 2000, T&M tendered a cashier=s check in the amount of $12,500 to UMLIC in an
attempt to redeem the property, but T&M made no attempt to pay the
note.  UMLIC rejected the offer and
returned the check.  On November 3, 2000,
the justice court granted UMLIC possession of the property.








On February 16, 2001, UMLIC made demand for payment
on the note and guaranty, but it received no response.  On March 6, 2002, UMLIC sold the property to
LSS Investments, Inc. for $66,000.  UMLIC
did not credit the amount received at the sale to the balance due on the
note.  On June 11, 2001, UMLIC filed the
underlying suit to collect the unpaid principal balance and interest.  T&M filed a counterclaim, alleging both
tort and contract violations.

The jury found against UMLIC on both the note and
the guaranty.  The jury further found in
favor of T&M and the Lozanos on their counterclaims of wrongful
foreclosure, negligence, breach of the deed of trust, fraud, and malice.  UMLIC filed a motion for judgment notwithstanding
the verdict, which the trial court denied. Based on the jury=s findings, the trial court=s judgment awarded T&M the fair market value of
the property as determined by the jury, damages for loss of business
reputation, and exemplary damages.  The
judgment also included damages to Tomas and Perla Lozano for mental
anguish.  UMLIC subsequently filed
motions to modify the judgment, for a new trial, and remittitur. The trial
court denied the motions.  This appeal
followed.   

                                                                    B.  Fraud

In its second issue, UMLIC contends the trial court
erred in submitting a question to the jury on the issue of fraud because
appellees failed to sufficiently plead fraud as a cause of action and the issue
was not tried by consent. 

                                                      1.  Sufficiency of Pleadings








A pleading should Aconsist
of a statement in plain and concise language of the plaintiff=s cause of action or the defendant=s grounds of defense.@  Tex.
R. Civ. P. 45(b).  The purpose of
pleadings is Ato give the adverse parties [fair] notice of each
party=s claims and defenses, as well as notice of the
relief sought.@  Woolam v.
Tussing, 54 S.W.3d 442, 447 (Tex. App.BCorpus Christi 2001, no pet.) (citing Perez v.
Briercroft Serv. Co., 809 S.W.2d 216, 218 (Tex. 1991)); see Tex. R. Civ. P. 47(a).  A pleading provides sufficient fair notice of
the claim involved when Aan opposing attorney of reasonable competence could
examine the pleadings and ascertain the nature and basic issues of the
controversy and the relevant testimony.@  Woolam,
54 S.W.3d at 448 (citing State Fid. Mortgage Co. v. Varner, 740 S.W.2d
477, 478 (Tex. App.BHouston [1st Dist.] 1987, writ denied)). 

In determining whether a cause of action was
pleaded, the pleadings must be sufficiently adequate so the court is able, from
an examination of the pleadings alone, to ascertain with reasonable certainty
and without resorting to information from another source, the elements of a
plaintiff's cause of action and the relief sought with sufficient information
upon which to base a judgment.  Id.
(citing Stoner v. Thompson, 578 S.W.2d 679, 683 (Tex. 1979)).  Petitions are construed liberally in favor of
the pleader.  Stone v. Lawyers Title
Ins. Corp., 554 S.W.2d 183, 186 (Tex. 1977).  AThe court will look to the pleader's intendment@ and uphold the pleading as to a cause of action
even if some element of that cause of action has not been specifically
alleged.  Gulf, C. & S.F. Ry. Co.
v. Bliss, 368 S.W.2d 594, 599 (Tex. 1963); see Boyles v. Kerr, 855
S.W.2d 593, 601 (Tex. 1993) (op. on reh=g).  AEvery fact will be supplied that can reasonably be
inferred from what is specifically stated.@  Bliss,
368 S.W.2d at  599.  AMere formalities, minor defects and technical
insufficiencies@ will not invalidate a cause of action in a
petition, so long as the pleading gives fair notice to the opposing party.  Stoner, 578 S.W.2d at 683.








A cause of action for fraud requires (1) a material
misrepresentation, (2) which was either known to be false when made or was
asserted without knowledge of its truth, (3) was made with the intention that
it be acted upon by the other party, (4) the other party acts in reliance upon
it, and (5) the other party suffers harm as a result of that reliance.  Bradford v. Vento, 48 S.W.3d 749, 755
(Tex. 2001).  Fraud may also occur when
(1) a party conceals or fails to disclose a material fact within their
knowledge, (2) the party knows that the other party is ignorant of the fact and
does not have an equal opportunity to discover the truth, (3) the party intends
to induce the other party to take some action by concealing or failing to
disclose the fact, and (4) the other party suffers injury as a result of acting
without knowledge of the undisclosed fact. 
Id. at 755-56. 

Appellees=s pleadings do not specifically allege that UMLIC
committed fraud.  Appellees argue that a
cause of action for fraud can be deduced from their pleadings.  In support of their argument, appellees
direct our attention to certain sections of their petition.  In relevant part, these sections provide:

(A) . . .  The
subsequent actions undertaken by [UMLIC] were in violation of the Texas Finance
Code in that the actions were usurious and constituted wrongful debt collection
practices as defined in the Texas Finance Code. 
[T&M] not having had proper notice of the foreclosure or sale were
never advised by [UMLIC] of the redemption of the property until after the
expiration of 180 days.  [UMLIC] then
took the position that T&M=s time for redemption of the property permitted
under Texas law had expired.  [UMLIC]
then wrongfully and illegally filed a forcible entry and detainer action in the
justice of the peace court, wherein UMLIC obtained possession of the premises,
causing [T&M] to vacate their long established business premises.  Finally, on or about March 6, 2002, UMLIC
sold the property the subject of this suit. . . .

 

                                                                      *
* * * * * *

 

(C) [UMLIC] owed [T&M] a duty of good faith and
fair dealing which it breached in failing to properly accelerate and give
proper notice of its intention to accelerate the note and debt, in  failing to accept the payment of $12,500
which amount was the sum [UMLIC] paid to redeem 
the property from the buyer at the sheriff=s
sale. . . . 

 








While the pleadings must be construed as favorably
as possible to the pleader, the inference that a cause of action has been
pleaded must be reasonable in light of what is specifically stated in the
pleading.  See Boyles, 855 S.W.2d
at 601.  In this case, we conclude that a
cause of action for fraud is not an inference that reasonably results from the
statements contained in appellees= petition. 
The statements, pointed out by appellees as alleging a cause of action
for fraud, are spread throughout the petition and are contained in sections
dedicated to pleading other causes of action. 
We find nothing in the petition that gave fair notice to UMLIC that
appellees were asserting a cause of action for fraud.  Accordingly, we hold that appellees failed to
plead fraud as a cause of action.   

                                                             2.  Trial by Consent

If an issue not raised by the pleadings is tried by
the express or implied consent of the parties, it is treated as if it had been
raised by the pleadings.  Tex. R. Civ. P. 67.  However, A[t]he
rule of trial by consent is limited to those exceptional cases where the
parties clearly tried an unpleaded issue by consent.@  Libhart
v. Copeland, 949 S.W.2d 783, 797 (Tex. App.BWaco
1997, no writ.) (citing White v. Sullins, 917 S.W.2d 158, 160 (Tex. App.BBeaumont 1996, writ denied)). The rule should be
cautiously applied and should not be applied in doubtful situations.  Id. 
An objection to the submission of a jury question on an unpleaded issue
prevents the trial of that issue by implied consent.  Id. 
(citing Harkey v. Tex. Employers' Ins. Ass'n, 208 S.W.2d 919, 922
(Tex. 1948)).  If a complaining party
does not object to testimony on the issue but does object to its submission on
some tenable ground, Ahe cannot be regarded as impliedly consenting that
[it] be tried when not raised by the pleadings.@  Harkey, 208 S.W.2d at 922.








In this case, although evidence relevant to the
issue of fraud may have been submitted without objection, UMLIC objected to the
submission of a jury question on the issue of fraud because it was not
supported by any pleading and served as a surprise to UMLIC.  Such a situation prevents the implication
that the issue was tried by consent.  See
Harkey, 208 S.W.2d at 923; Marine Creek Partners v. Caldwell, 926
S.W.2d 793, 796 (Tex. App.BFort Worth 1996, no writ); Morton v. Humber,
399 S.W.2d 831, 832 (Tex. Civ. App.BEastland 1966, no writ).  Therefore, we hold that the issue of fraud
was not tried by consent.  Appellant=s second issue is sustained.

                                                            C.  Foreclosure

In its thirteenth issue, UMLIC asserts that when it
redeemed the property, it became vested with fee simple title.  As the owner, UMLIC argues, it was not
required to execute foreclosure proceedings before selling the property, nor to
apply proceeds from the sale to the amount due on the note.

                                                        1.  Title After Redemption

In sub-issue (a) of its thirteenth issue, UMLIC
contends the trial court erred in finding that it did not acquire fee simple title
to the property.  Whether redemption of
property by a mortgagee under section 34.21 of the Texas Tax Code results in
fee simple title is an issue of statutory construction.  It is, therefore, a question of law that we
review de novo.  El Paso Natural Gas
Co. v. Minco Oil & Gas, Inc., 8 S.W.3d 309, 312 (Tex. 1999).  








When property is sold at a tax sale, the deed
purchased vests Agood and perfect title in the purchaser or the
purchaser=s assigns,@ including the right to the use and possession of
the property, subject only to the former owner=s
right to redemption.  Tex. Tax Code Ann. ' 34.01(n) (Vernon Supp. 2004-05).  Under the right to redemption, an owner may
redeem the property by paying the purchaser the amount bid for the property,
the deed recording fee, and any taxes, penalties, interest, or costs on the
property, plus a premium of twenty-five percent.  Tex.
Tax Code Ann. ' 34.21(e), (e)(2). 
Payment must be made no later than 180 days after the day the deed is
filed for record.  Tex. Tax Code Ann. ' 34.21(e)(1).  UMLIC argues
that because Gonzalez became vested with good and perfect title to the property
at the tax sale, when Gonzalez assigned a special warranty deed to UMLIC, UMLIC
purchased and received all of the same rights in the property that Gonzalez had
acquired.  

UMLIC now argues for rights of a Apurchaser.@  However, at the time of
the transaction, UMLIC did not attempt to Apurchase@ the property from Gonzalez. 
In its letter to Gonzalez, UMLIC clearly stated it was exercising its
statutory right to redeem the property and enclosed a cashier=s check for $12,500, the
statutorily-determined amount.  In a
sale, Gonzalez would have had the ability to negotiate price and decide whether
he wanted to sell or not sell.  In a
redemption, Gonzalez had no choice but to transfer the property to the redeemer
for the statutorily-determined price.








When an owner of real property tenders
an appropriate payment before the end of the redemption period, he effectually
extinguishes the rights of the purchaser at the tax sale. State v. Moak,
207 S.W.2d 894, 896-97 (1948); Burkholder v. Klein Indep. Sch. Dist.,
897 S.W.2d 417, 420 (Tex. App.BCorpus Christi 1995, no writ).  If an owner of property complies with the
requirements of the statute, a purchaser at a tax sale may not prevent the
owner from redeeming the property.  See
Tex. Tax Code Ann. ' 34.21(f) (Vernon Supp. 2004-05) (If Athe owner and the purchaser cannot agree
on the amount of redemption money due, or . . . the purchaser refuses to give
the owner a quitclaim deed to the property, the owner may redeem the land by
paying the required amount . . . to the assessor‑collector for the
county. . . .@). 

Because UMLIC made no actual attempt to
purchase the property, we conclude the status of UMLIC=s title does not depend on whether a
mortgagee would be eligible to purchase fee simple title to property at or
subsequent to a tax sale, but on what title a mortgagee holds after it redeems
property under the redemption statute. 
Redemption does not operate in the same manner as a purchase.  Unlike the purchase of real property,
redemption does not establish new title; it restores the parties to the
position they were in before the lien.  Assoc.
Home Equity Serv. Co., Inc. v. Hunt, 151 S.W.3d 559, 561-62 (Tex. App.BBeaumont 2004, no pet.); Bente v.
Sullivan, 115 S.W. 350, 353 (Tex. Civ. App.B Austin 1908, writ ref=d) (ARedemption gives no new title; it simply relieves the land from
the sale which has been made . . . ."). 


Redemption statutes are construed
liberally in favor of the right to redeem. 
See Jackson v. Maddox, 117 S.W. 185, 185 (Tex. Civ. App.B Fort Worth 1909, no writ) (quoting Dubois
v. Hepburn, 35 U.S. 1, 10 Pet. 1 (1836)). 
A[A]ny person who has any interest in
lands sold for taxes@ is considered an owner for the purposes
of redemption.  Rogers v. Yarborough,
923 S.W.2d 667, 669 (Tex. App.BTyler 1996, no pet.); Jackson,
117 S.W. at 185.  To redeem, a party need
only show Asome connection with the title, past or
present, by deed, descent, contract, or possession.@  Jackson,
117 S.W. at 185.  Proof of title is not
necessary.  Id.  








In applying the redemption statute,
where one co-owner redeems property from a tax foreclosure sale, courts have
concluded that it does not divest any other co-owner of his ownership interest
in the property.  See Reynolds v.
Batchelor, 216 S.W.2d 663, 667 (Tex. Civ. App.B Fort Worth 1948, writ ref=d n.r.e.); Bush v. Bush, 275 S.W.
1096, 1097 (Tex. Civ. App.B Waco 1925, no writ).  The action of a co-owner in redeeming the property
is considered as being for the benefit of all co-owners.  Poenisch v. Quarnstrom, 361 S.W.2d
367, 372 (Tex. 1962) (citing Bush, 275 S.W. at 1097).  The general rule in such circumstances is
that a person who is under an existing legal or contractual obligation to
another to pay taxes on property, but omits to pay such taxes, Acannot be allowed to strengthen his
title to such land by buying in the tax title when the property is sold as a
consequence of his omission . . . .@  Reynolds,
216 S.W.2d at 667 (quoting 51 Am. Jur.
919).  Nor can such a party strengthen
his title by redeeming title from a third party subsequent to the sale.  Id. (citing 51 Am. Jur. 955); see Bush, 275 S.W. at 1097.  This rule includes parties who, while not
legally obligated to pay taxes, have sufficient interest in the property that
they might redeem it to protect themselves from loss or injury, or to establish
a preferred lien.  See Reynolds,
216 S.W.2d at 667.  In these situations,
equity requires the protection of the rights of other owners or lien
holders.  Id.

The instant case differs in that UMLIC
was under no legal obligation to pay the taxes on the property.  Further, because neither UMLIC nor the SBA
were joined as parties to the tax foreclosure suit, it was not necessary for
UMLIC to pay the taxes to protect its security interest.  See Murphee Prop. Holdings, Ltd. v.
Sunbelt Sav. Ass=n of Tex., 817 S.W.2d 850, 852 (Tex. App.BHouston [1st Dist.] 1991, no writ)
(holding that a lien holder who is not served and joined as a party to a tax
suit cannot have his lien extinguished by the tax sale). 








Although UMLIC=s security interest in the property did
not create any legal obligation, it was only by virtue of this pre-existing
interest that UMLIC was eligible to complete the redemption transaction.  See Reynolds, 216 S.W.2d at 668; see
also State Mortgage Corp. v. Groos, 12 S.W.2d 260, 262 (Tex. Civ. App.BSan Antonio 1928, writ dism=d w.o.j.).  Under the liberal interpretation applied
to redemption statutes, the security interest is sufficient to qualify UMLIC as
an owner for purposes of redemption.  See
Jackson, 117 S.W. at 479-80. 
However, the designation of Aowner@ under the statute which allowed UMLIC to redeem the property,
also prevents it from divesting other Aowners@ of their interest in the property.  See Reynolds, 216 S.W.2d at 667.  The redemption statute, in effect, classifies
UMLIC and T&M as Aco-owners@ of the property, and UMLIC is equitably estopped from claiming
that it did anything other than redeem the property.  Id.  The redemption operated solely as payment of
the taxes and discharge of the tax lien; title to the property remained as it
was before the tax sale.  See id.;
Hunt, 151 S.W.3d at 562. 
Consequently, UMLIC did not strengthen its title by virtue of the
redemption.  Before the tax sale, UMLIC=s interest in the property was limited
to its rights under the deed of trust. 
This interest is what UMLIC redeemed and the only interest that UMLIC
retained.  See Hunt, 151 S.W.2d at
562.

Accordingly, we conclude the trial court
did not err in finding that UMLIC did not acquire fee simple title to the
property by virtue of the redemption. 
Sub-issue (a) of appellant=s thirteenth issue is overruled.  

                                                             2.  Jury Instructions








In its fourteenth issue, UMLIC contends
the trial court wrongfully commented on the weight of the evidence by assuming
disputed facts.  Specifically, UMLIC
complains of the court=s instruction in Question 4 of the jury
charge.  Question 4 provides:

Did UMLIC VP, L.L.C. wrongfully
foreclose on the property owned by T&M Sales?

 

A wrongful foreclosure occurs when the
holder of a note and deed of trust fails to give proper notice of foreclosure
under the deed of trust and improperly sells the property.  You are further instructed that a purchaser
in a redemption proceeding does not vest fee simple title in the purchaser at
the redemption proceeding if the purchaser is also the holder of the deed of
trust. 

 








The rules of civil procedure provide
that A[t]he court shall not in its charge
comment directly on the weight of the evidence.@  Tex. R. Civ. P. 277. 
In order to be a direct comment on the weight of the evidence, the issue
must suggest to the jury the trial court=s opinion on the matter submitted.  H.E. Butt Grocery Co. v. Bilotto, 985
S.W.2d 22, 24 (Tex. 1998); Frank B. Hall & Co. v. Beach, Inc., 733
S.W.2d 251, 264 (Tex. App.BCorpus Christi 1987, writ ref=d n.r.e.).  A submission to the jury is objectionable if
it assumes a disputed fact in issue.  Frank
B. Hall, 733 S.W.2d at 264.  However,
a court=s charge Ashall not be objectionable on the ground that it incidentally
constitutes a comment on the weight of the evidence . . . when it is properly a
part of an instruction or definition.@  Tex. R. Civ. P. 277.             All
of UMLIC=s objections to Question 4 are based on
UMLIC=s assertion that by virtue of its
redemption of the property, it acquired fee simple title.  As we discussed above, the resolution of this
issue was a matter of statutory construction. 
Matters of statutory construction are legal questions for the court to
decide.  City of Garland v. Dallas
Morning News, 22 S.W.3d 351, 357 (Tex. 2000).  Only issues of fact are to be submitted to
the jury; questions of law are the province of the court.  Hercules Exploration, Inc. v. Halliburton
Co., 658 S.W.2d 716, 724 (Tex. App.BCorpus Christi 1983, writ ref=d n.r.e.);  Barton v. Davis, 441 S.W.2d 299, 301
(Tex. Civ. App.BEl Paso 1969, writ ref=d n.r.e.).  An issue that involves the determination of a
matter of law should not be submitted to the jury.  Walker v. Fed. Kemper Life Assurance Co.,
828 S.W.2d 442, 451 (Tex. App.BSan Antonio 1992, writ denied); Hercules
Exploration, 658 S.W.2d at 724. 
Therefore, the trial court was correct in resolving the issue of title
to the property as a matter of law and instructing the jury in accordance with
that resolution.  Appellant=s fourteenth issue is overruled. 

                                                        3.  Adequacy of Pleading

In sub-issue (c) of its thirteenth
issue, UMLIC contends appellees failed to plead wrongful foreclosure as a cause
of action.  Any matter constituting an
affirmative defense or avoidance must be Aset forth affirmatively.@  Tex. R. Civ. P. 94.  An affirmative defense must be stated in
sufficient detail to give the plaintiff fair notice of what the defensive
issues and relief sought will be in the trial. 
See Tex. R. Civ. P.
47(a); Woolam, 54 S.W.3d at 447; J.K. & Susie L. Wadley Research
Inst. and Blood Bank v. Beeson, 835 S.W.2d 689, 693 (Tex. App.B Dallas 1992, writ denied).  We construe the petition liberally in favor
of the pleader, Stone, 554 S.W.2d at 186, and will not invalidate a
cause of action due to minor defects or technical deficiencies. Stoner,
578 S.W.2d at 683. 








In their third amended answer, after
their denial, appellees asserted:  ABy way of further answer the [appellees]
would show . . . [that UMLIC] failed to give notice of foreclosure, that it
failed to foreclose on the subject property, and that its sale of the subject
property was without such notice as required by law and [UMLIC=s] efforts to collect on the unjust debt
are wrongful and illegal.@ 
We consider these statements sufficient to affirmatively set out and
give fair notice of an intent to pursue a claim of wrongful foreclosure and
seek damages.  Sub-issue (c) of appellant=s thirteenth issue is overruled.

                                                    4.  Sufficiency of the Evidence

In sub-issue (b) of its thirteenth
issue, UMLIC contends the evidence is legally and factually insufficient to
sustain a judgment on wrongful foreclosure. 
UMLIC=s challenge to the jury=s finding on this point is again based
on UMLIC=s assertion that after redeeming the
property from Gonzalez, UMLIC had fee simple title to the property, and as fee
simple owner it was not required to go through any foreclosure
proceedings.  However, because we have
already determined that, as a matter of law, UMLIC did not acquire fee simple
title to the property, UMLIC=s rights to the property were limited to
those rights contained in the deed of trust. 

For a sale under a deed of trust to be
valid, the terms set out in the deed of trust must be strictly followed.  Univ. Sav. Ass=n v. Springwoods Shopping Ctr., 644 S.W.2d 705, 706 (Tex. 1982) (citing
Slaughter v. Qualls, 162 S.W.2d 671 (1942)); Bonilla v. Roberson,
918 S.W.2d 17, 21 (Tex. App.BCorpus Christi 1996, no writ) (ABecause a power of sale in a deed of
trust is such a harsh method of collecting debts and of disposing of another=s property, it can only be exercised by
strict compliance with the note and conditions of sale.@).








Appellees claimed that UMLIC wrongfully
foreclosed on the property because UMLIC did not send notice of a trustee=s sale, as provided for in the deed of
trust and required under section 51.002(b) of the Texas Property Code.  See Tex.
Prop. Code Ann. ' 51.002(b) (Vernon Supp. 2004).  At trial, UMLIC admitted that it had not sent
any notice of a foreclosure to T&M or to the Lozanos.  We hold this judicial admission to be legally
and factually sufficient evidence to support the jury=s finding that UMLIC wrongfully
foreclosed on the property.  Sub-issue
(b) of appellant=s thirteenth issue is overruled.  

                                                                   5.  Damages

In sub-issue (e) of its thirteenth
issue, UMLIC contends the trial court submitted the wrong measure of damages
for wrongful foreclosure to the jury, and thus the award of damages should be
reversed.  The trial court=s judgment specifies the entire amount
found by the jury to be the fair market value of the property as wrongful
foreclosure actual damages.

Failure to properly foreclose on
property gives rise to a cause of action for either the return of the property
or damages.  See Univ. Sav. Ass=n, 644 S.W.2d at 706; Durkay v. Madco Oil Co., 862
S.W.2d 14, 21 (Tex. App.BCorpus Christi 1993, no writ) (op. on
reh=g). 
The correct measure of damages is the difference between the value of
the property in question at the date of foreclosure and the remaining balance
due on the indebtedness.  Durkay,
862 S.W.2d at 21 (citing Farrell v. Hunt, 714 S.W.2d 298, 299 (Tex.
1986)).  It is the burden of the
complaining party to prove the amount of indebtedness at the time of
foreclosure.  Id.  The jury found the fair market value of the
property at the time it was sold by UMLIC to be $79,600.  However, neither the trial court nor the jury
calculated the amount of indebtedness due at the time of the sale.  See Farrell, 714 S.W.2d at 300
(concluding in wrongful foreclosure suit, court cannot render damages without
evidence of how much remains due on the note).








Nevertheless, the record shows the
various elements constituting the total amount of indebtedness at the time of
foreclosure are undisputed.  See GXG,
Inc. v. Texacal Oil & Gas, 977 S.W.2d 403, 422 (Tex. App.BCorpus Christi 1998, pet. denied)
(noting that there was sufficient evidence in the record to allow the court to
determine the correct balance due on a note).

The trial court received into evidence,
without objection, the promissory note, the deed of trust, and the guaranty
agreement.  At trial, the parties
stipulated that as of November 19, 1998, the principal balance remaining on the
note was $49,602.24.  The note provides
for simple interest at the rate of ten percent per annum.  Interest accrued for 1,203 days.[4]  At the rate of ten percent per annum, the per
diem interest is $13.59, resulting in total accrued unpaid interest of
$16,348.77.

In addition, UMLIC paid $12,500 to
Gonzalez to redeem the property after the tax foreclosure sale.  Under the terms of the deed of trust, UMLIC
was entitled to recoup this expenditure by adding the amount to the balance due
on the note.  Therefore, we conclude the
total amount due on the note on the date of sale of the property was
$78,451.01.








We hold that the difference between the
fair market value of the property ($79,600.00) and the total amount due on the
note on the date of sale ($78,451.01) produces wrongful foreclosure damages of
$1,148.99.  See GXG, 977 S.W.2d at
423 (if a trial court errs in computing damages, the appellate court may reform
the amount of damages); Travelers Ins. Co. v. Martin, 28 S.W.3d 42, 47
(Tex. App.BTexarkana 2000, no pet.) (AA reviewing court has the power to
modify the amount of recovery and reform a damages award.@); see also Rhodes v. Dallas Joint
Stock Land Bank, 91 S.W.2d 962, 964 (Tex. Civ. App.BDallas 1936, no writ) (holding error in
calculation of amount due on accelerated note secured by deed of trust does not
require reversal of cause; appellate court may correct judgment).  We sustain sub-issue (e) of appellant=s thirteenth issue and reform the trial
court=s judgment to reflect actual damages for
wrongful foreclosure to be $1,148.99.

                                                   D. 
Judgment on the Note

In its first issue, UMLIC argues that,
as a matter of law, it was entitled to judgment on the note, breach of the
guaranty, and the amount due.

To collect on a promissory note as a
matter of law, a holder or payee must establish that (1) there is a note, (2)
he is the legal owner and holder of the note, (3) the defendant is the maker of
the note, and (4) a certain balance is due and owing on the note.  Blankenship v. Robins, 899 S.W.2d 236,
238 (Tex. App.BHouston [14th Dist.] 1994, no
writ).  Once a holder establishes these
facts, he is entitled to recover only if the maker of the note fails to
establish a defense.  Id. (citing Groschke
v. Gabriel, 824 S.W.2d 607, 610 (Tex. App.BHouston [14th Dist.] 1991, writ denied)). 

As we stated above, the trial court
received into evidence, without objection, the promissory note, the deed of
trust, and the guaranty agreement.  At
trial, the parties stipulated that UMLIC is the holder and owner of the note,
and that as of November 19, 1998, the principal balance remaining on the note
was $49,602.24.  Appellees never disputed
their signatures on the note, deed of trust, or guaranty agreement.  UMLIC argues that appellees failed to plead
or prove a viable affirmative defense.  








In response, appellees assert that they
adequately pleaded and proved that UMLIC wrongfully  foreclosed on the property.  Wrongful foreclosure is an appropriate
affirmative defense to a suit to collect on a note.  Cf. Shearer v. Allied Live Oak Bank,
758 S.W.2d 940, 943-44 (Tex. App.BCorpus Christi 1988, writ denied)
(noting that the affirmative defense of wrongful foreclosure must be raised at
trial).  We have already determined that
wrongful foreclosure was adequately pleaded and supported by sufficient
evidence.  Further, in determining actual
damages for wrongful foreclosure, the remaining balance due on the indebtedness
was deducted from the fair market value of the property.  Appellant=s first issue is overruled.

                                                E.  Causes
of Action in Tort

In its twenty-first issue, UMLIC
contends a mortgagee owes no independent duty of good faith and fair dealing to
a mortgagor.  In its seventeenth issue,
UMLIC complains the trial court erred in submitting an ordinary negligence
claim to the jury. 








A tort obligation is a general
obligation imposed by law Aapart from and independent of promises
made and . . . the manifested intentions of the parties, to avoid injury to
others.@  Southwestern
Bell Tel. Co. v. Delanney, 809 S.W.2d 493, 496 (Tex. 1991) (quoting W. Keeton, D. Dobbs, R. Keeton & D. Owen,
Prosser and Keeton on the Law of Torts ' 92 at 655 (5th Ed. 1984)). 
To establish a negligence cause of action, a party must show (1) the
existence of a legal duty, (2) breach of that duty, and (3) damages proximately
resulting from the breach. San Benito Bank & Trust Co. v. Landair
Travels, 31 S.W.3d 312, 317 (Tex. App.BCorpus Christi 2000, no pet.) (citing Van
Horn v. Chambers, 970 S.W.2d 542, 544 (Tex. 1998)).  In order to establish liability, a
complaining party must prove the existence and violation of a duty, San
Benito Bank & Trust, 31 S.W.3d at 317 (citing El Chico Corp. v.
Poole, 732 S.W.2d 306, 311 (Tex. 1987)), a legally enforceable obligation
to conform to a particular standard of conduct. 
Valley Shamrock v. Vasquez, 995 S.W.2d 302, 306 (Tex. App.BCorpus Christi 1999, no pet.).  The existence of a duty is a threshold
question of law for the court, to be decided from the particular facts
surrounding the case in question.  Valley
Shamrock, 995 S.W.2d at 302 (citing Mitchell v. Mo.-Kan.‑Tex. R.R.,
786 S.W.2d 659, 662 (Tex. 1990)).  

                                            1.  Duty of Good Faith and Fair Dealing

In its twenty-first issue, UMLIC
contends a mortgagee owes no independent duty of good faith and fair dealing to
a mortgagor.  The Texas Supreme Court has
declined to impose an implied duty of good faith and fair dealing in every
contract, though it has recognized that such a duty may arise as a result of Aa special relationship between the
parties governed or created by a contract.@  Arnold
v. Nat=l County Mut. Fire Ins. Co., 725 S.W.2d 165, 167 (Tex. 1987); English
v. Fischer, 660 S.W.2d 521, 522 (Tex. 1983).  Such Aspecial relationships@ have been found to arise where
contractual relationships are marked by shared trust or an imbalance of
bargaining power.  See FDIC v. Coleman,
795 S.W.2d 706, 709-10 (Tex. 1990); Arnold, 725 S.W.2d at 167.  When a special relationship between parties
gives rise to independent duties, such as a duty of good faith and fair
dealing, those duties are enforceable as torts. 
See Coleman, 795 S.W.2d at 709-10; Delanney, 809 S.W.2d at
494 n.1.  However, absent a Aspecial relationship,@ any duty to act in good faith is
contractual in nature and its breach does not amount to an independent
tort.  Cole v. Hall, 864 S.W.2d
563, 568 (Tex. App.BDallas 1993, writ dism=d w.o.j.) (citing Cent. Sav. &
Loan Ass'n v. Stemmons N.W. Bank, N.A., 848 S.W.2d 232, 239 (Tex. App.BDallas 1992, no writ)); Adolph Coors
Co. v. Rodriguez, 780 S.W.2d 477, 481 (Tex. App.BCorpus Christi 1989, writ denied). 








Texas courts have found no special
relationship between a mortgagor and a mortgagee, or between a creditor and a
guarantor, that would impose an independent common law duty of good faith and
fair dealing.  See Coleman, 795
S.W.2d at 709 ("The relationship of mortgagor and mortgagee ordinarily
does not involve a duty of good faith. 
Similarly, the relationship between a creditor and a guarantor does not
ordinarily import a duty of good faith.@); White v. Mellon Mortgage Co.,
995 S.W.2d 795, 800 (Tex. App.BTyler 1999, no pet.) (A[T]he relationship between a mortgagor
and a mortgagee does not give rise to a duty of good faith.@); Long v. NCNBBTex. Nat=l Bank, 882 S.W.2d 861, 869 (Tex. App.BCorpus Christi 1994, no writ) (Asecured parties do not owe guarantors a
duty of good faith@); Victoria Bank & Trust Co. v.
Brady, 779 S.W.2d 893, 902 (Tex. App.BCorpus Christi 1989), rev=d on other grounds, 811 S.W.2d 931 (Tex. 1991) (citing Thigpen
v. Locke, 363 S.W.2d 247, 253 (Tex. 1962)) (AWe know of no cases in this state which impose a duty of good
faith and fair dealing on lenders in general to their borrowers: a
debtor-creditor relationship does not give rise to such a duty. . . .@); Lovell v. Western Nat=l Life Ins., 754 S.W.2d 298, 303 (Tex. App.BAmarillo 1988, writ denied) (A[T]here exists no special relationship
between the [borrowers and note-holder] and, therefore, no duty of good faith
and fair dealing is implied.@). 
Accordingly, we conclude there was no duty of good faith and fair dealing
imposed between UMLIC and the appellees. 
Appellant=s twenty-first issue is sustained.

                                                          2.  General Negligence








In its seventeenth issue, UMLIC
complains the trial court erred in submitting an ordinary negligence claim to
the jury.  Appellees assert that every
contract is accompanied by a common law duty to perform with Acare, skill, reasonable expedience, and
faithfulness the thing agreed to be done, and a negligent failure to observe
any of these conditions is a tort, as well as a breach of contract.@  See
Montgomery Ward & Co. v. Scharrenbeck, 204 S.W.2d 508, 510 (Tex.
1947).  While it is true that a
contractual relationship between parties may create duties under both contract
and tort law, Jim Walter Homes, Inc. v. Reed, 711 S.W.2d 617, 618 (Tex.
1986), the supreme court has clarified the broad language used in Scharrenbeck
and explained that even where a party is negligent, depending on the
circumstances, the cause of action may sound only in tort or only in
contract.  See Delanney, 809
S.W.2d at 494-95.  Therefore, A[t]he acts of a party may breach duties
in tort or contract alone or simultaneously in both.@ 
Jim Walter Homes,
711 S.W.2d at 618. 

The only duty that courts have imposed
between a creditor and a debtor or guarantor is that the Asecured party owes both the note maker
and the guarantor the duty to discharge its respective contractual obligations
properly.@  Long,
882 S.W.2d at 869; Resolution Trust Corp. v. Westridge Ct. Joint Venture,
815 S.W.2d 327, 332 (Tex. App.BHouston [1st Dist.] 1991, writ denied); Georgetown
Assoc., Ltd. v. Home Fed. Sav. & Loan Ass'n, 795 S.W.2d 252, 256 (Tex.
App.BHouston [14th Dist.] 1990, writ dism=d w.o.j.).  A secured party breaches this duty by
negligently failing to exercise ordinary care in disposing of the
security.  Long, 882 S.W.2d at 869
(citing T.O. Stanley Boot Co. v. Bank of El Paso, 847 S.W.2d 218, 223
(Tex. 1992)).  However, in order for
appellees to recover under a theory of general negligence, we must determine
whether breach of this duty constitutes an independent tort, such that it could
sustain a cause of action apart from the existence of the contract.  








Though the basic principles of contract
and tort causes of action are well settled, it is often difficult to
distinguish the type of action brought.  Jim
Walter Homes, 711 S.W.2d at 617; Int=l Printing Pressmen & Assistants'
Union v. Smith, 198
S.W.2d 729, 735 (Tex. 1946).  In order to
determine whether a cause of action arises in contract or tort, we must look
beyond the form of the pleading and consider "both the source of the
defendant's duty to act (whether it arose solely out of the contract or from
some common‑law duty) and the nature of the remedy sought by the
plaintiff.@  Formosa
Plastics Corp. USA v. Presidio Eng'rs & Contrs., 960 S.W.2d 41, 45
(Tex. 1998) (citing Crawford v. Ace Sign, Inc., 917 S.W.2d 12, 12 (Tex.
1996)). 

                                                            a.  Source of the Duty








The supreme court has advised that
"actions in contract and actions in tort are to be distinguished in that an
action in contract is for the breach of a duty arising out of a contract either
express or implied, while an action in tort is for a breach of duty imposed by
law."  Smith, 198 S.W.2d at
735 (citing 1 C.J.S. 1098).  An action
arises from a contract "if the action is not maintainable without pleading
and proving the contract, [or] where the gist of the action is the breach of
the contract, either by malfeasance or nonfeasance.@  Id.
(citing 1 Am. Jur. 442).  If a party must rely on the duties created in
the contract, or if the negligence claim alleges the breach of the very duties
encompassed in a contract, the action is in substance an action on the
contract.  See Delanney,
809 S.W.2d at 496 (Gonzalez, J., concurring) (citing Johnson, Inc. v. Cont=l Constructors, Inc., 630 S.W.2d 365, 368 (Tex. App.BAustin 1982, writ ref=d n.r.e.)); CBI NA‑CON v. UOP
Inc., 961 S.W.2d 336, 340 (Tex. App.BHouston [1st Dist.] 1997, pet.
denied).  However, a claim sounds in tort
only if a party=s conduct Awould give rise to liability independent of the fact that a
contract exists between the parties.@  Delanney,
809 S.W.2d at 495. 

When a mortgagee exercises its option to
sell property on which it has been granted a lien, the provisions it must
follow governing the foreclosure and sale are contained in the deed of
trust.  See Bonilla, 918 S.W.2d at
21.  These provisions must be strictly
followed, and whether the sale has been conducted properly is judged against
the requirements contained in the deed.  See
id.; Univ. Sav. Assoc., 644 S.W.2d at 706.  We consider this reliance on the specific
obligations contained in the contract. 
Because it did not follow the dictates of the deed of trust, UMLIC
failed to conduct the foreclosure sale properly and, thus, violated the
contract executed between the parties. 

We note that, had there been no contract
between the parties, UMLIC=s seizure of possession and subsequent
sale of the property to a third party would have supported a cause of action in
tort for the resulting damages.  However,
because T&M gave UMLIC a contractual right to take these actions and
executed a contract spelling out the respective rights of the parties in such a
circumstance, the contract governs any disputes between the parties relating to
the disposition of the property.  See
DeWitt County Elec. Coop., Inc. v. Parks, 1 S.W.3d 96, 105 (Tex. 1999) (AA person who enters a neighbor's
property and cuts down trees with no contractual right to do so can be held
liable in tort. But when, as here, a contract spells out the parties'
respective rights about whether trees may be cut, the contract and not common‑law
negligence governs any dispute about whether trees could be cut or how trees
were cut.@)

Accordingly, we conclude that the source
of UMLIC=s duty to conduct the foreclosure sale
properly was the deed of trust.  








                                                     b.  Nature of Remedy Sought

We next look to the nature of the injury
and remedy sought to assist in determining Awhether the action sounds in contract alone or also in tort. When
the injury is only the economic loss to the subject of a contract itself, the
action sounds in contract alone.@  Adolph
Coors Co., 780 S.W.2d at 485; see Delanney, 809 S.W.2d at
495; Jim Walter Homes, 711 S.W.2d at 618; CBI NA‑CON, 961
S.W.2d at 340.  

The jury found damages in favor of
appellees for loss of business reputation. A[B]usiness reputation is a major factor which usually is included
in loss of value or diminution of a business.@  Nelson v. Data Terminal
Sys., Inc., 762 S.W.2d 744, 748 (Tex. App.BSan Antonio 1988, writ denied). 
Claims that assert "only economic injury to the subject matter of
the contract itself [include] . . . damages for . . . loss of good will and
lost profits." CBI NA-CON, 961 S.W.2d at 340; see Thomson v.
Espey Huston & Assocs., 899 S.W.2d 415, 421 (Tex. App.BAustin 1995, no writ) ("'Economic
loss' has been defined as 'damages for inadequate value, costs of repair and
replacement of the defective product, or consequent loss of profits B without any claim of personal injury or
damage to other property. . . .'") (quoting 2314 Lincoln Park West
Condo. Ass'n v. Mann, Gin, Ebel & Frazier, Ltd., 555 N.E.2d 346, 348
(Ill. 1990)).  Therefore, damages for
loss of business reputation appear to be purely economic.  

In its twenty-third issue, UMLIC asserts
that these damages are not proper in a breach of contract action.  We agree.








ALoss of business reputation is not an
element of damages recoverable for breach of contract.@  Rubalcaba
v. Pac./Atl. Crop Exch., 952 S.W.2d 552, 559 (Tex. App.BEl Paso 1997, no pet.) (citing Nelson,
762 S.W.2d at 748); Sterling Projects Inc. v. Fields, 530 S.W.2d 602,
605 (Tex. Civ. App.BWaco 1975, no writ) (citing Streetman
v. Lasater, 185 S.W. 930 (Tex. Civ. App.BEl Paso 1916, no writ)). 
Thus, the remedy sought presents an incongruity.  Though pure economic damages generally
indicate an action on a contract, under these circumstances they may not be
awarded.   

c. 
Conclusion

Though the discordant nature of the
remedy sought does not help to clarify the type of cause of action, the source
of the duty is firmly grounded in the contract. 
Therefore, after weighing both factors, we conclude that the action
brought by appellees was in substance an action on the contract and does not
constitute an independent tort. 
Appellant=s seventeenth issue is sustained.

Further, because loss of business
reputation damages are not recoverable in a contract action, appellant=s twenty-third issue is sustained.

                                                    F.  Breach
of Contract

In its twenty-second issue, UMLIC argues
that the evidence is legally and factually insufficient to support a judgment
based on breach of contract because appellees never pointed to a specific term
in the contract that was breached. 








In order to recover for a breach of contract,
appellees must show (1) a valid contract existed between the parties, (2)
appellees performed or tendered performance, (2) UMLIC breached the contract,
and (4) appellees suffered damages resulting from that breach.  Ford v. City State Bank of Palacios,
44 S.W.3d 121, 137 (Tex. App.B Corpus Christi 2001, no pet.).  UMLIC challenges the sufficiency of the
evidence only regarding whether appellees can identify a specific element of
the contract as having been breached. 
We, therefore, limit our review to this element.  See Tex.
R. App. P. 47.1.

The deed of trust was received into evidence without objection and
states that in the event of any foreclosure, the ABeneficiary or Beneficiary=s agent shall give notice of the
foreclosure sale as provided by the Texas Property Code as then amended.@ 
These terms are unambiguous and constitute legally and factually
sufficient evidence of a specific term of the deed of trust which was
breached.  Appellant=s twenty-second issue is overruled.                                                                   G.  Mental
Anguish

In its eighteenth issue, UMLIC contends
a lender does not owe a common law duty to a guarantor not to inflict mental
anguish.  

ATexas does not recognize a general legal
duty to avoid negligently inflicting mental anguish.@  City
of Tyler v. Likes, 962 S.W.2d 489, 494 (Tex. 1997) (citing Boyles v.
Kerr, 855 S.W.2d 593, 597 (Tex. 1993)). 
A claimant may recover mental anguish damages only in connection with
the breach of some other legal duty.  Id.  Further, because mental anguish can be
difficult to predict and its existence inherently difficult to verify, Texas
courts do not recognize it as a compensable element of damages in many cases
where it may occur.  Id. at
494-95.  AFor many breaches of legal duties, even tortious ones, the law
affords no right to recover for resulting mental anguish.@  Id.  In the limited circumstances where a duty of
good faith is imposed by a special relationship, mental anguish is often
compensable as the foreseeable result of a breach of that duty.  Id. 
However, most relationships, Awhether legal or personal, create no
duty to avoid causing mental anguish.@  Id.   








The only duty imposed between UMLIC and
the Lozanos as guarantors was a duty for UMLIC to exercise ordinary care and
conduct the foreclosure sale disposing of the security properly.  See Long, 882 S.W.2d at 869
(citing T.O. Stanley Boot Co., 847 S.W.2d at 223); Resolution Trust
Corp., 815 S.W.2d at 332.  This duty
arises from the contractual relationship between the parties and does not
constitute an independent tort action.  See
discussion supra Part E.2.  A[M]ental anguish damages are not
recoverable in a cause of action for breach of contract nor in a tort action
arising from a contractual breach.@  Hallmark
v. Hand, 885 S.W.2d 471, 481 (Tex. App.BEl Paso 1994, writ denied); Rubalcaba, 952 S.W.2d at
558.  Accordingly, we conclude it was
error to include mental anguish damages in the judgment.  Appellant=s eighteenth issue is sustained.

                                                     H.  Exemplary
Damages

The jury found that the harm suffered by
T&M resulted from malice and awarded $2.5 million in exemplary
damages.  In its twenty-seventh issue,
UMLIC asserts the evidence is legally and factually insufficient to support the
jury=s award of exemplary damages.








Exemplary damages are allowed where a
claimant proves by clear and convincing evidence that the harm suffered
resulted from fraud, malice, or gross negligence.  Dillard Dep't Stores, Inc. v. Silva,
148 S.W.3d 370, 373 (Tex. 2004) (citing Tex.
Civ. Prac. & Rem. Code ' 41.003(a)).  A suit for breach of contract, or for breach
of an implied covenant to a contract, will not support an award of exemplary
damages, even if the contract was maliciously breached.  Manges v. Guerra, 673 S.W.2d 180, 184
(Tex. 1984) (citing Amoco Prod. Co. v. Alexander, 622 S.W.2d 563, 571
(Tex. 1981)); A. L. Carter Lumber Co. v. Saide, 140 Tex. 523, 168 S.W.2d
629, 631 (1943); Castle Tex. Prod. L.P. v. Long Trusts, 134 S.W.3d 267,
277 (Tex. App.B Tyler 2003, pet. denied). 

Because we have already determined that
appellees failed to sufficiently plead a cause of action for fraud, and there
is no independent cause of action in tort in the case before us, even with a
finding of malice, appellees cannot recover exemplary damages based solely on
wrongful foreclosure.  See Int=l Bank, N.A. v. Morales, 736 S.W.2d 622, 624 (Tex. 1987)
(reversing award of exemplary damages in wrongful foreclosure suit); Boswell
v. Hughes, 491 S.W.2d 762, 764 (Tex. Civ. App.BEl Paso 1973, write ref=d n.r.e.) (finding trial court erred in
awarding exemplary damages in wrongful foreclosure action); Covington v.
Burke, 413 S.W.2d 158, 160 (Tex. Civ. App.BEastland 1967, writ ref=d n.r.e.) (finding no merit in a claim
for exemplary damages on a finding of wrongful foreclosure).  Appellant=s twenty-seventh issue is sustained.

                                                 I.  Improper
Jury Argument

In its twenty-eighth issue, UMLIC contends
that appellees= counsel presented improper and
inflammatory jury argument, the cumulative effects of which were calculated to
and probably did cause rendition of an improper judgment.  








To obtain reversal of a judgment on the
basis of improper jury argument, a complainant must prove (1) an error; (2)
that was not invited or provoked; (3) that was preserved at trial by a proper
objection, motion to instruct, or motion for mistrial; (4) was not curable by
an instruction, a prompt withdrawal of the statement, or a reprimand by the
trial court; and (5) that the argument by its nature, extent, and degree
constituted reversibly harmful error.  Krishnan
v. Ramirez, 42 S.W.3d 205, 221 (Tex. App.BCorpus Christi 2001, pet. denied) (citing Standard Fire Ins.
Co. v. Reese, 584 S.W.2d 835, 839 (Tex. 1979)).  Reversal is proper only upon a showing that Athe probability that the improper argument
caused harm is greater than the probability that the verdict was grounded on
the proper proceedings and evidence.@  Reese,
584 S.W.2d at 840.

Improper jury arguments can be either
curable or incurable.  Otis Elevator
Co. v. Wood, 436 S.W.2d 324, 333 (Tex. 1968).  A jury argument is "curable" when
the harmful effect of the argument can be eliminated by an instruction to the
jury to disregard what they have just heard. 
Id.  However, when an
argument is so inflammatory that its harmfulness could not be eliminated by an
instruction to the jury to disregard it, the prejudicial nature of the argument
is so acute that it is "incurable." 
Id.  If an argument is
considered to be curable, counsel must make a prompt objection to it and
request an instruction, or the error is waived. 
Id.  When an argument is
incurable, a failure to object does not result in a waiver, under the reasoning
that "counsel making the argument is the offender so the law will not
require opposing counsel to take a chance on prejudicing his cause with the
jury by making the objection."  Id. (citing Smerke v. Office Equip. Co.,
138 Tex. 236, 158 S.W.2d 302 (Tex. Comm. App. 1941)).








Improper jury argument results in
incurable harm only in rare instances, such as an appeal to racial prejudice,
calling someone a liar or a fraud, or by making an unsupported charge of
perjury.  Dover Corp. v. Perez,
587 S.W.2d 761, 767 (Tex. App.BCorpus Christi 1979, writ ref=d n.r.e.).  Whether an argument is incurable depends on Athe degree of prejudice flowing from the
argument B whether the argument, considered in its
proper setting, was reasonably calculated to cause such prejudice to the
opposing litigant that a withdrawal by counsel or an instruction by the court,
or both, could not eliminate the probability that it resulted in an improper
verdict.@  Tex.
Employers' Ins. Ass'n v. Haywood, 153 Tex. 242, 266 S.W.2d 856, 858 (1954).

UMLIC alleges the following six
instances of improper jury argument by appellees= counsel: (1) counsel mentioned a settlement letter sent by UMLIC
to T&M, (2) counsel told the jury that the Lozanos had no notice of the tax
judgment in violation of the motion in limine and without evidence to support
the statement, (3) counsel called UMLIC a Avulture@ coming to Texas to Apick on a carcass,@ (4) counsel claimed he was mislead by a
letter UMLIC sent to appellees when there was no evidence to support the claim
and both Tomas and Perla Lozano had testified that they were not mislead by the
letter, (5) counsel told the jury that UMLIC had done Athe same thing@ to other businesses without evidence to
support the claim, and (6) counsel told the jury not to let a corporation from
out of state treat businesses in Athe Valley@ the way UMLIC treated appellees. 
At no point during jury argument did UMLIC=s counsel object or ask for an instruction to the jury regarding
the argument.  UMLIC argues that these
remarks engendered regional bias and discussed evidence that was not eventually
offered at trial.  We conclude, however,
that these remarks do not rise to the level of incurable arguments.  Therefore, UMLIC=s failure to object did not preserve
error, and the issue is waived. 
Appellant=s twenty-eighth issue is overruled.                   

In light of our disposition of these
issues, it is unnecessary to address UMLIC=s remaining issues.  Tex.
R. App. P. 47.1. 








We REVERSE that part of the trial court=s judgment awarding (1) exemplary
damages to T&M in the amount of $2,500,000, (2) actual damages to Tomas
Lozano in the amount of $8,250, and (3) actual damages to Perla Lozano in the
amount of $9,880.  We RENDER judgment
that Tomas Lozano and Perla Lozano take nothing by their counterclaim.

We REFORM the remaining part of the
trial court=s judgment to show that T&M have
judgment against UMLIC for wrongful foreclosure in the amount of $1,148.99,
together with post-judgment interest at the rate of ten percent per annum from
August 15, 2002 until paid.  As reformed,
the trial court=s judgment is AFFIRMED.

 

 

FEDERICO G. HINOJOSA

Justice

 

 

Opinion delivered and filed this

the 15th day of September, 2005.

 











[1]
T&M was founded, owned,
and operated by Tomas and Perla Lozano. 
The Lozanos are involved in this action both as representatives of the
corporation and in their individual capacities.





[2] At the time of this suit, Ezell no
longer worked for T&M and had agreed with the Lozanos that any findings or
awards for or against him would be assumed by the Lozanos.  He did not participate in the suit.





[3]
T&M stayed in possession
of the property for several months after receiving the notice to vacate.





[4] Interest accrued on the unpaid
balance from November 19, 1998 until March 6, 2002, the date the property was
sold to LSS Investments, Inc.