### REYNOLDS et al. v. BATCHELOR et al.
### No. 14997.

Court of Civil Appeals of Texas.
Fort Worth.

Dec. 17, 1948.

Rehearing Denied Jan. 14, 1949.

Aubrey G. Alexander and J. Carroll McConnell, both of Fort Worth, for appellants.

Culbertson, Morgan, Christopher & Bailey and Cecil A. Morgan, all of Fort Worth, for appellees.

McDONALD, Chief Justice.

Homer Hamilton owned the property involved in this suit, a residence in the City of Fort Worth, when he died intestate in 1934. His heirs failed to pay the taxes for a good many years. Suit for taxes was brought under the provisions of Art. 7345b, Vern.Tex.Civ.St., and judgment of foreclosure was followed by sheriff's sale of the property to the City of Fort Worth, one of the taxing units, on June 6, 1944. The sheriff's deed recites that the property was sold to the City for $1800. Mrs. Della

Reynolds, one of the appellants herein, and Mrs. Mary Coleman were among those owning undivided interests in said property, the latter owning a one-sixth interest.

On April 24, 1946, for a consideration of $50 paid to her in cash, Mrs. Mary Coleman executed and delivered to Sam K. Batchelor, who is the appellee herein, a general warranty deed purporting to convey said property to Batchelor. Said deed purported to convey the entire property, as distinguished from the one-sixth interest owned by Mrs. Coleman.

On May 1, 1946, the City of Fort Worth, acting through its mayor as authorized by its governing council, caused to be executed a general warranty deed conveying said property to appellee Batchelor for a recited consideration of $1800 in cash paid to said City. The evidence shows that as an additional consideration for the conveyance Batchelor also paid to said City the sum of $214.94 for taxes accruing for the years 1943, 1944 and 1945. There is no question raised in this suit regarding the validity of the claim of said City for taxes for the three years just mentioned. See State v. Moak, Tex.Sup., 207 S.W.2d 894.

On June 5, 1946, Mrs. Della Reynolds filed the present suit against Batchelor and Charlie Beland and wife Esther Beland. The petition alleges in effect that Mrs. Reynolds owns an undivided one-half interest in the property, and that Mrs. Beland and Batchelor each owns an undivided one-fourth interest. It further alleges that Batchelor on May 1, 1946, paid the sum of $1800 to the City of Fort Worth in settlement of the delinquent taxes. The prayer is for a partition of the property, and there is an offer in general terms on the part of plaintiff to do full equity in the partition and division of the property.

On August 23, 1947, Herman Hamilton filed an intervention, alleging that Mrs. Della Reynolds, Batchelor and the intervenor were the sole owners of the property.

After a non-jury trial judgment was rendered on July 27, 1948, decreeing that Mrs. Reynolds, Mrs. Beland and husband, and the intervenor Hamilton take nothing, and decreeing that Batchelor have judgment against said parties quieting his title to said property. Thereafter the court filed separate findings of fact and conclusions of law.

Mrs. Reynolds and the intervenor Hamilton have appealed by filing affidavits in lieu of appeal bond. Eight points of error are presented in their brief, but the last five of them are immaterial if we are correct in affirming the judgment of the trial court, because they relate to matters that would be material only if appellants were awarded an interest in the property.

Appellants' contention as to their right to judgment for an interest in the property may be summed up in a few words. Article 7345b, cited supra, in Section 12, provides that the owner of the property sold for taxes or anyone having an interest therein may redeem the property from the tax sale by paying, during the second year after the tax sale, the amount bid for the property by the purchaser at the tax sale, including one dollar tax recording fee, and all taxes, penalties, interest and costs thereafter paid thereon, plus fifty per cent of the aggregate total. Appellants contend that the purported purchase of the property by Batchelor from the City, which was within said two year period, and the payment of $1800 by Batchelor to the City, was in fact only a redemption of the property, that the redemption wiped out the tax title acquired by the City, and that the title of the owners of the property remained as it was before the tax sale, subject only to Batchelor's right to reimbursement for the taxes he had paid. To state it even more simply, the claim is that Batchelor did no more than pay the delinquent taxes, and that the transaction between him and the City was nothing more than a redemption of the property.

Before getting to the discussion of what we believe to be the controlling questions in the case, we shall dispose of certain contentions which are made in the briefs of the parties.

A tender by appellants to the City, prior to the time of the conveyance to Batchelor, or thereafter to Batchelor, if within the redemption period, of the amount required to redeem under Article 7345b, even though not accepted, would ipso facto

have worked an immediate redemption of the property and would have left the City, or Batchelor, with no title vested by the tax sale. Burns v. Ledbetter, 54 Tex. 374. But the offer in general terms to do equity, set out in appellants' pleadings, did not amount to a tender of the amount required to redeem the property. Rotge v. Murphy, Tex. Civ.App., 198 S.W.2d 932, writ ref. n. r. e.; Clark v. Puls, Tex.Civ.App., 192 S.W.2d 905, writ ref. n. r. e. Failure of one part owner to contribute to a redemption made by another part owner will not of itself destroy the joint ownership. Winsett v. Winsett, 203 Ala. 373, 83 So. 117.

As we view the case, the problem is to determine whether the transaction between Batchelor and the City was in fact a redemption or a purchase of the property, and whether, if as between them it was a purchase, there are facts and circumstances in the case which require that the transaction, as between appellants and appellee, shall nevertheless be treated as a redemption only.

Appellants appear to feel that it is important that the present suit was filed within the redemption period. They argue that the filing of the suit "pegged" the rights of the parties. We do not share this view. If the transaction between appellee and the City was in fact a redemption, or if it is to be treated as such in this suit, the result is simply that the tax title was wiped out, that the parties were left with whatever title they acquired by inheritance or by purchase from those who acquired title by inheritance, that any of the parties had the right to seek a partition of the property, and that appellee was entitled to proportionate reimbursement from the other owners of the amount he paid to redeem the property. It is obvious that a partition suit would not have to be brought within the redemption period. We say this in view of our holding that appellants' offer to do equity, made in their pleadings, did not amount to a tender of the amount necessary to redeem.

█ We have carefully reviewed the evidence and the trial court's findings of fact. The City bid the sum of $1800 at the tax sale. It received that amount from appel-

lee when it executed the deed to him, plus the sum of $214.94 to cover taxes for three years not included in the suit for taxes. Appellee received at that time a general warranty deed from the City, not a redemption receipt. Mr. Aston, who testified that he handled property bought in by the City at tax sales, spoke repeatedly of the sale of the property to appellee. The amount which would have been required to redeem the property from the City under Art. 7345, Sec. 12, would have been in excess of $2700. The evidence is at least sufficient to support a judgment necessarily based on the theory that the transaction between appellee and the City was a sale, not a redemption from taxes.

Appellants argue that the City had nothing it could sell to appellee prior to the expiration of the redemption period, and that in any event sale could have been made only by the sheriff in the manner set out in the second paragraph of Sec. 9 of Art. 7345b.

█ Under the holding in State v. Moak, Tex.Sup., 207 S.W.2d 894, it is clear that the title acquired by the City at the tax sale in 1944 was an estate on condition. The estate was granted in praesenti, that is to say, as of the date of the tax sale, not as of the end of the redemption period, but it was an estate that was liable to be defeated upon a compliance with the redemption laws by those entitled to redeem. The estate was also subject to the possessory rights of the original owners during the redemption period. It is equally clear, both from the provisions of Secs. 9 and 12, Art. 7345b, and from the opinion in Rotge v. Murphy, Tex.Civ.App., 198 S.W.2d 932, cited supra, that the sale by the City within the redemption period was valid. Little v. Dennis, 143 Tex. 582, 187 S.W.2d 76, relied on by appellants in support of their argument that the City could make no valid conveyance of the property within the redemption period, is cited and distinguished in Rotge v. Murphy. The sale by the City did not, of course, cut off the right of anyone owning an interest in the property to redeem it within the two year period by paying the sum required by Sec. 12 of Art. 7345b. The right to redeem is operative against an assignee of the purchaser at the

tax sale. Turner v. Smith, 56 Tex.Civ.App. 1, 119 S.W. 922, writ ref. The condition would have defeated the estate purchased at the tax sale, to-wit, redemption by the owner of the property or an interest therein, not having occurred within the two years, and the City having conveyed its estate to appellee, it necessarily follows that the conditional estate ripened into an unconditional one.

We finally are driven to the determination of a question that to our minds is not altogether an easy one. It is whether the purchase by appellee from the City must yet be treated as only a redemption under the facts of the case before us.

We find stated in 51 Am.Jur. 919 a rule that has been applied in a great many cases:

"It is a general principle of law that one who by virtue of an existing legal or contractual relation with another is under an obligation to such other person to pay the taxes on lands, but who omits to pay such taxes, cannot be allowed to strengthen his title to such land by buying in the tax title when the property is sold as a consequence of his omission to pay the taxes on it; his purchase at the sale will merely operate as a payment of the taxes, and the title will be the same as it was before the sale, except that the lien for taxes is discharged. This rule includes those whose duty it is to pay the taxes or who have such an interest in the property that they might redeem the same from tax sale and save themselves from loss or injury, or those lien holders who may pay the taxes and are given a preferred lien over other lien holders and the titleholder for the amount of the taxes paid."

The same principles operate in like manner in the case of a purchase of the tax title during the period of redemption. 51 Am.Jur. 955.

▪ As said above, the tax sale passes a conditional estate to the purchaser at the tax sale, and the purchaser at the tax sale may convey such conditional estate even during the redemption period. If he conveys to a former owner or part owner, resort is had to the doctrines of equity to protect the rights of other owners or lienholders. Relief may be had either by im-

posing a trust on the legal title, or, as appears more often to have been done, the part owner who undertakes to purchase the tax title will be estopped to claim that he did anything other than redeem the property from the tax sale. Although the present transaction occurred during the redemption period, there are situations in which part owners who purchase from the purchaser at the tax sale may be estopped to claim the tax title, even though the last purchase occurred after the redemption period.

▪ Appellee Batchelor acquired the interest from Mrs. Coleman long after the taxes in question became delinquent and after the foreclosure sale had been made to the City. It cannot be said that the taxes were left unpaid or that the tax lien was foreclosed through any fault or neglect on appellee's part, or that he had any legal or contractual relation with the owners of the property that required him to pay the taxes before the land was sold to the City. He did not become personally liable for payment of the accrued taxes by reason of his purchase from Mrs. Coleman in the absence of an agreement to pay same. Bashara v. Saratoga Ind. School Dist., 139 Tex. 532, 163 S.W.2d 631.

▪ The general rule is that a cotenant who purchases at tax sale does so for the benefit of all cotenants, and cannot under such purchase claim as against his cotenants. Bush v. Bush, Tex.CivApp., 275 S.W. 1096. The same principle applies when the cotenant purchases from another who purchased at the tax sale, in which case he will be treated as having only redeemed the property, and this seems to be true even though the last purchase be made after the redemption period but before the cotenants have been evicted from the property. Id. But it seems clear that we have no cotenancy relation in the present case. The case falls within the rule declared as follows in Jones v. Siler, 129 Tex. 18, 100 S.W.2d 352, 353:

▪ The rule is "well settled in this state and in most of the other states, that a conveyance by one cotenant to a stranger to the title, by an instrument purporting to pass the entire title in severalty and not merely the grantor's interest, when fol-

lowed by entry of such stranger, claiming under such deed, into actual and exclusive possession, amounts to a disseisin of the other cotenants."

Appellants argue that appellee actually took possession under the deed from the City, but we believe that the record shows such a repudiation of the cotenancy as to remove the case from the cited rule governing purchase of tax title by a cotenant.

But even if appellee was under no duty, legal or moral, to the other owners to pay the delinquent taxes, we think that the above rule of equitable estoppel should be applied if the record shows that he was able to and did consummate the transaction with the City by reason of being an owner of an interest in the property. We have reviewed the record with special care to determine if such was the case.

The deed from Mrs. Coleman to appellee was executed on April 24, 1946. The record shows four bank checks drawn by appellee on that same day. One, for $50, was payable to Mrs. Coleman. Another, for $1800, was payable to "City of Fort Worth." The third was for $214.94, payable to "Tax Collector, City of Fort Worth," and according to the testimony was given in payment of City taxes for the years 1943, 1944 and 1945. The fourth was for $63.17, payable to "John Bourland, Tax Collector," and according to the testimony was given in payment of State and County taxes for the same three years. The deed from the City of Fort Worth was dated May 1, 1946. The conclusion is almost inescapable that on April 24th, the day appellee received the deed from Mrs. Coleman, tentative arrangements had been made to purchase the property from the City, because at that time appellee obviously knew the amount that was to be paid to the City, and the exact amounts of the taxes for 1943, 1944 and 1945, both to the City and to the State and County. He testified that he gave the $1800 check to his attorney to be delivered to the City. There is nothing in the testimony to show that Batchelor negotiated with the city in the rule of a part owner of the property. The inferences logically to be drawn from the record are to the contrary.

We do not have a case here of an owner of the property or an interest therein seeking to profit by his own neglect to pay taxes he should have paid. We do not have the fiduciary relation of cotenants. We can find no evidence to show that appellee was enabled to, or that he undertook to, deal with the City on the basis of being entitled to redeem the property. For one thing, he could not have compelled the City to accept less than $2700 by way of redemption. His purchase from the City did not cut off any right of the other owners to redeem, because they could have tendered the money to him and redeemed the property after he received the deed from the City. It is not contended that the other owners even thought that appellee's purchase from the City was being made for their benefit. The other owners have never tendered to appellee, the City, or anyone else the sum required to redeem the property. They have suffered no loss by anything done by appellee. So far as the record before us shows, the other owners would have lost all rights in the property in about six weeks after appellee bought the property from the City. We search the record in vain for any wrongful conduct on appellee's part, any breach of contract or duty, any default in payment of taxes he owed, any disregard of fiduciary relation, any word or deed which might have caused the other owners not to redeem the property, any misrepresentation to them or anyone else, or any other fact or circumstances which would justify us in constructing a trust in order to get at a wrongdoer, or in invoking an estoppel to promote the equity and justice of the case by preventing appellee from asserting his rights under the general law. We cannot find that he has so conducted himself that it would be contrary to equity and good conscience for him to allege and prove the truth, which is that he purchased the property from the City of Fort Worth. 17 Tex.Jur. 130.

The judgment of the trial court is affirmed.