In The


 

Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-03-515 CV


____________________



ASSOCIATES HOME EQUITY SERVICES COMPANY, INC., 


f/k/a FORD CONSUMER FINANCE COMPANY, INC. 


n/k/a CITIFINANCIAL MORTGAGE COMPANY, INC., Appellant



V.



MARK D. HUNT AND KELLY C. HUNT, Appellees






On Appeal from the 221st Judicial District Court


Montgomery County, Texas


Trial Court Cause No. 01-08-05371






OPINION


 Mark D. Hunt and Kelly C. Hunt signed a promissory note, secured by a deed of
trust, payable to Associates Home Equity Services Company, Inc. The Hunts claim
Associates' lien was subsequently extinguished by a tax sale, though the Hunts redeemed
the property from the purchaser at the tax sale. Both the Hunts and Associates filed
motions for summary judgment. The trial court granted summary judgment in favor of the
Hunts. We conclude Associates' deed of trust encumbers the property. 

The Facts


 Summary judgment is proper when the movant establishes there is no genuine issue
of material fact and the movant is entitled to judgment as a matter of law. Tex. R. Civ.
P. 166a(c); Swilley v. Hughes, 488 S.W.2d 64, 67 (Tex. 1972). The parties stipulated to
the applicable facts. The Hunts purchased real property in Montgomery County in 1996. 
To finance the purchase, the Hunts executed a promissory note, payable to Associates
(f/k/a Ford Consumer Finance, n/k/a Citifinancial Mortgage Company, Inc.), in the
amount of $155,093.25. The debt was secured by a deed of trust. The Hunts used the
property as their homestead. The Hunts failed to pay property taxes. In 1998, Tomball
Independent School District obtained a judgment against the Hunts for the delinquent
property taxes. Associates was joined as a defendant, but did not pay the taxes. The
property was sold at a tax sale to satisfy the school district's tax lien.

 A third party, Bobby Granger, purchased the property at the tax sale. The Hunts
redeemed the property from Granger pursuant to section 34.21(c) of the Texas Tax Code. 
See Act of May 30, 1999, 76th Leg., R.S., ch. 1481, § 33, sec. 34.21, 1999 Tex. Gen.
Laws 5109 (current version at Tex. Tax Code Ann. § 34.21(c) (Vernon Supp. 2004)). 
Associates then posted the property for a foreclosure sale pursuant to the terms of the deed
of trust. The trial court enjoined Associates from foreclosing on the property. 

 In their motion for summary judgment, the Hunts argued Tomball's tax lien was
superior to Associates' mortgage lien, and the tax foreclosure sale extinguished Associates'
lien. In its motion for summary judgment, Associates argued its lien should be
"reinstated." The trial court's summary judgment declared Associates' lien was
"extinguished, discharged, and void" and the Hunts "shall hold such real property, fixtures
and improvements, in fee, free from lien by [Associates] or any successor or assign of
[Associates]." Associates filed this appeal. 

Redemption


 The redemption privilege was made available to delinquent taxpayers with the
adoption of Article 8, § 13 of the Texas Constitution in 1876. See Tex. Const. art. 8, 
§ 13 interp. commentary (Vernon 1993). 22 David B. Brooks, Texas Practice:
Municipal Law and Practice § 9.18 (2d ed. 1999). The right of redemption is also set
forth in chapter 34, subchapter B of the Tax Code. Act of May 30, 1999, 76th Leg., R.S.,
ch. 1481, § 33, sec. 34.21(c), 1999 Tex. Gen. Laws 5109 (current version at Tex. Tax
Code Ann. §34.21(c) (Vernon Supp. 2004)). The applicable version of § 34.21(c)
provides:

 If real property that was used as the owner's residence homestead . . . when
the suit or the application for the warrant was filed has been resold by the
taxing unit under Section 34.05, the owner of the property having a right of
redemption may redeem the property on or before the second anniversary of
the date on which the taxing unit files for record the deed from the sheriff
or constable by paying the person who purchased the property from the
taxing unit the amount the purchaser paid for the property, the amount of the
fee for filing the purchaser's deed for record, the amount paid by the
purchaser as taxes, penalties, interest, and costs on the property, plus a
redemption premium of 25 percent of the aggregate total if the property is
redeemed in the first year of the redemption period or 50 percent of the
aggregate total if the property is redeemed in the second year of the
redemption period.


Id. "The right of redemption does not grant or reserve in the former owner of the real
property the right to the use or possession of the property, or to receive rents, income, or
other benefits from the property while the right of redemption exists." Act of May 30,
1999, 76th Leg., R.S., ch. 1481, § 33, sec. 34.21(h), 1999 Tex. Gen. Laws 5111 (current
version at Tex. Tax. Code Ann. § 34.21(h) (Vernon Supp. 2004)). 

 A purchaser at a tax sale receives a conditional estate, which is subject to defeat
upon "compliance with the redemption laws by those entitled to redeem." See Reynolds
v. Batchelor, 216 S.W.2d 663, 666 (Tex. Civ. App.--Fort Worth 1948, writ ref'd n.r.e.);
see also O'Hanlon v. Morrison, 187 S.W. 692, 696 (Tex. Civ. App.--Amarillo 1916, no
writ); see Act of May 27, 1995, 74th Leg., R.S., ch. 1017, § 1, sec. 33.95, 1995 Tex.
Gen. Laws 5086 (amended 1997) (current version at Tex. Tax Code Ann. § 33.95
(Vernon 2001)). Redemption does not give new title. See Bente v. Sullivan, 52 Tex. Civ.
App. 454, 462, 115 S.W. 350, 353 (1908, writ ref'd). In Reynolds v. Batchelor, the court
said that one under an obligation to pay property taxes who "undertakes to purchase the
tax title will be estopped to claim that he did anything other than redeem the property from
the tax sale." Reynolds, 216 S.W.2d at 667. The court stated as a general principle an
owner who does not pay taxes should not be allowed to strengthen his title at a tax sale. 
Id. The court's underlying assumption appears to have been that an owner who redeems
his property does not strengthen his title against other owners or lienholders. See id. 

 The Hunts did not purchase the property at the tax sale. (1) Rather, they are the
former owners who exercised their right of redemption within the time permitted by
statute. Their prior title to the property was restored by the exercise of their right of
redemption as "the owner of the property" under § 34.21(c) of the Texas Tax Code.

 The Hunts rely on cases holding foreclosure of a senior lien extinguishes junior
liens, but we do not read the cases as determinative of the effect of redemption. Both
Diversified Mortgage Investors v. Lloyd D. Blaylock General Contractor, Inc., 576
S.W.2d 794, 806 (Tex. 1978) and National Western Life Ins. Co. v. Acreman, 425 S.W.2d
815, 816 (Tex. 1968) addressed whether a mechanic's lien or a prior-recorded deed of
trust took priority. Redemption was not at issue in either case. Likewise, National Loan
Investors, L.P. v. Spring Independent School Dist., No. 01-94-00659-CV, 1995 WL
489441 (Tex. App.-- Houston [1st Dist.] 1995, no pet.) (not designated for publication) did
not involve redemption. (2) 

 Generally, a deed of trust is a mortgage with a power to sell on default. See
Starcrest Trust v. Berry, 926 S.W.2d 343, 351 (Tex. App.--Austin 1996, no writ). The
Hunts admit the debt still exists, but they argue it is now unsecured. But redemption
merely relieves the property of the tax sale. When the Hunts redeemed the property, they
restored the title to what it was before the tax sale, except the tax lien has been discharged. 
They did not discharge their agreement with Associates reflected in the deed of trust. (3) The
Hunts' ownership of the property was subject to Associates' deed of trust. That ownership
is what they redeemed. The deed of trust is a valid lien on the property after the Hunts'
redemption. Associates' issue is sustained. 


 REVERSED AND REMANDED. 

 _________________________________

 DAVID GAULTNEY

 Justice

 

Submitted on May 27, 2004

Opinion Delivered November 4, 2004

 

Before McKeithen, C.J., Burgess and Gaultney, JJ.

DISSENTING OPINION


 I respectfully dissent. What the majority has done is judicially create an exception
to the long standing rule that the foreclosure of a superior lien (4) extinguishes all inferior
liens (5) claiming the rule should not apply in the redemption arena. While not exactly on
point, a case where redemption was a factor, but not the issue, Murphee Property
Holdings, Ltd. v. Sunbelt Savings Ass'n of Texas, 817 S.W.2d 850, 851 (Tex. App.--Houston [1st Dist.] 1991) in its factual set-up acknowledged the long standing rule: (6)

 On October 21, 1986, Mission Bend Municipal Utility District No. 1
("the District") filed the tax suit against Highway 6 Venture to collect taxes
assessed against the 61 acres of land during 1985, and to obtain the judicial
foreclosure of the District's tax lien.

 Sunbelt, the record lien holder on the property, was not made a party
to the tax suit. By certified mail from the District's attorney, Sunbelt
received written notice on November 3, 1986, of the tax suit and the fact that
its lien interest in the property was subject to cancellation by virtue of the
District's tax lien.

 Although Highway 6 Venture was served with citation, it failed to
appear in the tax suit. On December 19, 1986, the District was granted a
default judgment against Highway 6 Venture for $105,445.88, and for the
judicial foreclosure and sale of the property. On December 26, 1986,
Sunbelt received written notice, again by certified mail from the District's
attorney, that judgment in the tax suit had been entered, and that Sunbelt's
interest in the property could be lost if it did not take immediate action.


 In this case, Associates was joined as a defendant (7) and filed a general denial. Both
as a party and under the deed of trust, Associates could have paid the taxes and sought
reimbursement from the Hunts through its own foreclosure if necessary. (8) Associates could
have also protected its lien by bidding at the foreclosure sale. For whatever reason,
Associates chose not to act until after the redemption by the Hunts and now have convinced
the majority to create this exception to a long standing rule that has served both consumers
and the lending industry well. (9)

 There is no reason to lengthen this dissent by describing the mischief that might be
created between third party purchasers at tax sales and potential redemptors towards lien
holders to avoid the "foreclosures at tax sales do not extinguish liens" rule established by
the majority or even the mischief that might be created between lien holders and potential
redemptors towards third-party purchasers. Suffice to say, these potentials exist and they
would not were this court to stay the course and not create this new exception. I would
affirm the judgment of the trial court.


 
____________________________

 DON BURGESS

 Justice


Dissent Delivered

November 4, 2004
1. The Tax Code provides in part as follows: 

 "A purchaser for value at or subsequent to the tax sale may conclusively presume
the validity of the sale and takes free of any claim of a party with a prior interest in the
property subject to the provisions of Section 16.002(b), Civil Practice and Remedies Code,
and subject to applicable rights of redemption." Act of May 24, 1995, 74th Leg., R.S.,
ch. 1017, § 1, sec. 33.95, 1995 Tex. Gen. Laws 5086 (current version at Tex. Tax Code
Ann. §33.95 (Vernon 2001)). 

 See also Tex. Tax Code Ann. § 33.50(c) (Vernon 2001).
2. Unpublished cases have no precedential value. See Tex. R. App. P. 47.7.
3. Apparently, the deed of trust in the record is missing a page.
4. It is undisputed the tax lien was superior to Associates' lien. Priority of Tax Liens
Over Other Property Interests. See Tex. Tax Code Ann. § 32.05 (Vernon 2002).
5. Diversified Mortg. Investors v. Lloyd D. Blaylock Gen. Contractor, Inc., 576
S.W.2d 794, 806 (Tex. 1978)(op. on reh'g); Irving Lumber Co. v. Alltex Mortg. Co., 468
S.W.2d 341, 343-44 (Tex. 1971).
6. As a part of the factual "set-up" this is clearly dicta, but it shows how the industry
and the courts viewed the rule.
7. An unbroken line of decisions by Texas Courts, dealing with a variety of statutes,
has uniformly held that a lien holder must be joined as a party in a suit to enforce a tax
lien, and that any judgment rendered absent the joinder of such a lien holder is defective
in that it does not dispose of the rights of all of the parties interested in the property. 
Coakley v. Reising, 436 S.W.2d 315, 318 (Tex. 1968), appeal after remand sub nom., 
Coakley v. Crow, 457 S.W.2d 431, 433 (Tex. Civ. App.--Corpus Christi 1970, writ ref'd
n.r.e.), cert. denied, Coakley v. Reising, 402 U.S. 906, 91 S.Ct. 1376, 28 L.Ed.2d 646
(1971); Murphee, 817 S.W.2d at 851; Norris v. Harry Hott & Assocs., Inc., 612 S.W.2d
630, 632 (Tex. Civ. App.--Dallas 1981, no writ); Sanchez v. Hillyer-Deutsch-Jarratt Co.,
27 S.W.2d 634, 635 (Tex. Civ. App.--San Antonio 1930, writ ref'd); State Mortgage
Corp. v. Grooss, 12 S.W.2d 260, 262 (Tex. Civ. App.--San Antonio 1928, writ dism'd
w.o.j.); Ball v. Carroll, 92 S.W. 1023, 1026 (Tex. Civ. App.--Galveston 1906, writ
ref'd).
8. The judgment reflects there was $8,316.84 of taxes and attorneys' fees owing
against the home with a fair market value of $111,160.
9. Throughout my private practice, I perhaps mal-practiced the few lender clients I
was fortunate to represent when I advised them to "bid-in" their liens at tax sales or
forever lose them.