NUMBER 13-03-659-CV

 

                         COURT OF APPEALS

 

               THIRTEENTH DISTRICT OF TEXAS

 

                  CORPUS CHRISTI - EDINBURG

 

 

 

T & M SALES & ENVIRONMENTAL SYSTEMS, INC.,       Appellant,

 

                                           v.

 

LSS INVESTMENTS, UMLIC VP, LLC, 

AND PABLO GONZALES,                                          Appellees.

 

 

 

                  On appeal from the 107th
District Court

                          of Cameron
County, Texas.

 

 

 

                     MEMORANDUM OPINION

 

                     Before Justices Rodriguez, Castillo
and Garza

                        Memorandum Opinion by Justice Castillo

 

 

 








This is a
trespass to try title case.  Appellant
T&M Sales Environmental Systems, Inc. 
("T&M") brings this appeal from the trial court's grant of
a traditional motion for summary judgment in favor of appellee LSS Investments
("LSS").  By two issues,
T&M contends the court erred in granting the summary judgment in favor of
LSS, and in holding LSS's claims to be derivative of T&M's claims against
UMLIC VP, LLC ("UMLIC").[1]  We affirm the judgment of the trial court. 

I.  BACKGROUND

The case on
appeal involves a dispute to title of real property located in Cameron County,
Texas.  T&M originally owned this
property ("the property").  On
July 19, 1989, T&M executed a note with the Small Business Administration
("SBA") for a loan in amount of $150,000, which was secured by a deed
of trust on the property.  On September
19, 1999, the SBA sold the note to UMLIC, which then became holder of the deed
of trust.  The property has been the
subject of three lawsuits, including the underlying case.  In order to provide a comprehensive
understanding of this case, we review the procedural history of each lawsuit. 

 








A.  The Previous Tax Lawsuit

On June 15, 1998,
the San Benito Consolidated Independent School District ("SBISD@) sued T&M for delinquent ad valorem taxes for
the years 1995, 1996, and 1997 in the 404th District Court of Cameron County,
Texas.  On June 30,1998, T&M paid the
outstanding taxes.  On March 8, 1999, the
tax suit was dismissed by the district court for want of prosecution.  T&M again failed to timely pay taxes for
the year 1998, and SBISD filed a motion to reinstate the case on October 29,
1999, 235 days after the order dismissing the case for want of prosecution.[2]  On that same day, the district court
reinstated the case.  On December 17,
1999, the district court rendered judgment in favor of the SBISD, foreclosing
on the property to satisfy the delinquent taxes.  On February 1, 2000, the sheriff sold the
property at a tax sale to the highest bidder, Pablo Gonzales.  Gonzales's bid of $10,000 exceeded the
outstanding taxes by more than $6,000; the excess remained in the registry of
the court.  On February 11, 2000, the tax
deed was filed of record. 








On June 6, 2000,
by special warranty deed, Gonzales conveyed the property to UMLIC, the holder
of the deed of trust on the property.[3]  On June 30, 2000, T&M filed a motion for
release of excess funds from the court registry.  On July 24, 2000, UMLIC advised T&M that
it was the owner of the property at issue and gave notice to vacate.[4]  On August 1, 2000, the district court granted
T&M's motion and tendered the excess funds. 
On October 20, 2000, T&M forwarded UMLIC a cashier's check in the amount
of $12,500 to redeem the property in question. 
On October 23, 2000, UMLIC returned that check, and on November 3, 2000,
a justice of the peace evicted T&M. 
On March 2, 2003, T&M filed a motion to set aside judgment in the
SBISD tax suit.  On July 28, 2003, the
tax court denied the motion, and T&M did not appeal that order.[5]


 B. 
The Wrongful Foreclosure Lawsuit








On June 11, 2001,
UMLIC filed suit against T&M on the note secured by the property in County
Court at Law No. 2, Cameron County, Texas. 
UMLIC claimed that T&M owed it a balance of approximately $60,000.  T&M filed a counterclaim alleging that
UMLIC had committed wrongful foreclosure, negligence, and fraud.  On March 6, 2002, during the pendency of this
case, UMLIC sold the property in question to LSS Investments, Inc. by general
warranty deed.  

On October 15,
2002, T&M obtained a judgment against UMLIC.  The judgment includes actual damages caused
by UMLIC's wrongful foreclosure in the amount of $79,600, the then‑fair‑market‑value
of the property.[6]  UMLIC appealed from this judgment on October
9, 2003.[7]


C.  Trespass to Try Title Suit

On December 2,
2002, T&M filed the underlying trespass to try title suit against LSS in
the 107th Judicial District Court of Cameron County, Texas.  On April 1, 2003, LSS filed a third‑party
petition against UMLIC, alleging breach of warranty of title and seeking to
recoup from UMLIC any damages T&M might recover from LSS.  On June 10, 2003, UMLIC filed a third‑party
petition against Gonzales, likewise seeking to recoup from him any damages LSS
might recover from UMLIC. 








On July 23, 2003,
UMLIC, as a third‑party defendant, filed a traditional motion for summary
judgment on T&M's claim against LSS. 
The motion was based on three grounds: (1) estoppel; (2) election of
remedies; and (3) limitations.  The
motion also asked for summary judgment on LSS's claims against UMLIC on the
ground that LSS's claims were derivative of T&M's claims against LSS.  On August 27, 2003, LSS filed a response to
UMLIC=s motion for summary judgment, in which LSS joined
UMLIC=s motion to the extent it sought judgment on
T&M's claims against it.  On
September 17, 2003, T&M filed its response to the motion, to which UMLIC
replied on September 23, 2003.  The trial
court held a hearing on September 25, 2003. 
At the conclusion of the hearing, the court signed a final judgment
dismissing T&M's claims against LSS, LSS's claims against UMLIC, and
UMLIC's claims against Gonzales.  On
October 6, 2003, T&M appealed the judgment to this Court, and it is from
this judgment that the present appeal is taken. 


II.  ISSUES ON APPEAL

On appeal,
T&M contends that the trial court erred in granting summary judgment, which
is based on the following grounds:  (1)
T&M is collaterally estopped from suing UMLIC, (2) T&M has elected its
remedy and hence is barred from bringing this suit to recover title, or T&M
is statutorily barred under section 33.54 of the Texas Tax Code.  See Tex.
Tax Code Ann. ' 33.54 (Vernon 2001).  T&M also asserts that the trial court
erred as a matter of law in holding that LSS=s
claims were derivative of T&M's claims against UMLIC. 

III.  STANDARD OF REVIEW








We review de novo
a trial court=s grant or denial of a traditional motion for
summary judgment.  Tex. R. Civ. P. 166a(c); Ortega v. City Nat'l Bank, 97 S.W.3d
765, 771 (Tex. App.BCorpus Christi 2003, no pet. h.) (op. on
reh'g).  The movant bears the burden of
showing both no genuine issue of material fact and entitlement to judgment as a
matter of law.  Tex. R. Civ. P.
166a(c); Ortega,  97 S.W.3d at
771.  In deciding whether there is a
genuine issue of material fact, we take evidence favorable to the non‑movant
as true.  Ortega, 97 S.W.3d
771.  We make all reasonable inferences
and resolve all doubts in favor of the non‑movant.  Id. 
Summary judgment for a defendant is proper if the defendant disproves at
least one element of each of the plaintiff's claims or affirmatively
establishes each element of an affirmative defense to each claim.  Id.  The non‑movant has no burden to respond
to a traditional motion for summary judgment unless the movant conclusively (1)
establishes each element of its cause of action or defense, or (2) negates at
least one element of the non‑movant's cause of action or defense.  Id.  Where a summary judgment is granted without
specifying grounds on which the motion is granted, it will be upheld if any
ground in the motion for summary judgment can be sustained.  Ford v. City State Bank of Palacios,
44 S.W.3d 121, 127 (Tex. App.BCorpus Christi 2001, no pet.)

IV.  ANALYSIS

In its first
issue, T&M contends that the trial court erred in granting the motion for
summary judgment.  UMLIC presented three
grounds in its motion.  The trial court's
order does not reflect which of those formed the basis for its judgment.  We therefore examine each ground asserted in
UMLIC's motion for summary judgment.  See
id.  

 








A.  Collateral Estoppel and Quasi‑Estoppel

The first ground
UMLIC presented to the trial court in its motion for summary judgment is that
T&M is estopped from denying the validity of the tax deed.  On appeal, T&M contends this ground is
based on "collateral estoppel," which is an affirmative defense.  Sysco Food Servs., Inc. v. Trapnell, 890
S.W.2d 796, 801 (Tex. 1994).  While UMLIC
agrees that collateral estoppel is an affirmative defense, it counters that it
instead relied upon "quasi‑estoppel."  

1.  UMLIC's Collateral Estoppel
Ground

Collateral estoppel
bears another nameBissue preclusion. 
It is often compared with res judicata, which is claim preclusion.  State & County. Mut. Fire Ins.Co. v.
Miller, 52 S.W.3d. 693, 696 (Tex. 2001). 
Both reflect the need to bring litigation to an end, prevent vexatious
litigation, maintain the stability of court decisions, promote judicial
economy, and prevent double recovery.  See Barr v. Resolution Trust Corp., 837
S.W.2d 627, 631 (Tex. 1992). 
Specifically, collateral estoppel bars the litigation of specific issues
already decided in an earlier case, but not an entire cause of action or
defense.  Id. at 628.  Thus, collateral estoppel focuses on what was
actually litigated and essential to the judgment.  See Van Dyke v. Boswell et al., 697
S.W.2d 381, 384 (Tex. 1985). 








Where a movant
pleads collateral estoppel as an affirmative defense, the movant has the burden
to affirmatively or conclusively establish every element of this defense.  Ortega, 97 S.W.3d at 772.  A party seeking to invoke the doctrine must
establish that (1) the facts sought to be litigated in the second action were
fully and fairly litigated in the first action, (2) those facts were essential
to the judgment in the first action, and (3) the parties who litigated the
issue in the first action were cast as adversaries.  John G. & Marie Stella Kenedy Mem'l
Found. v. Dewhurst, 90 S.W.3d 268, 288 (Tex. 2002).  

Because UMLIC
presents nothing to establish any element of collateral estoppel, we conclude
that if the trial court's order of summary judgment was based on a ground
asserting collateral estoppel, this ground will not support the summary
judgment.  

2.  Quasi-Estoppel








We note UMLIC
denies it alleged collateral estoppel.  Instead, it reiterates that its motion for
summary judgment was based on quasi‑estoppel.  Quasi‑estoppel precludes a party from
asserting, to another's disadvantage, a right inconsistent with a position
previously taken by him.  Atkinson Gas
Co. v. Albrecht, 878 S.W.2d 236, 240 (Tex. App.BCorpus Christi 1994, writ denied).  The doctrine applies when it would be
unconscionable to allow a person to maintain a position inconsistent with one
in which he previously acquiesced, or from which he accepted a benefit.  See id. at 242‑43.  UMLIC relies on Marshall v. Lockheed,
245 S.W.2d 307 (Tex. Civ. App.BWaco 1952, writ ref=d
n.r.e.), for the equitable principle that "one who accepts and retains the
fruits of a judgment is estopped thereafter to assert its
invalidity."  Id. at
308.  UMLIC argues that, just like the
owner of the property subject to a tax sale, T&M received and kept the
excess funds from the tax sale and thus is estopped from challenging the title.


The facts before
us are distinguishable from Marshall, 245 S.W.2d at 307.  In Marshall, the owner accepted the
benefits from the tax sale and then filed suit to have the tax deed declared
void and to recover possession of the property. 
Id. at 307.  However, in
the instant case, T&M claims that it was not disputing the prior tax sale
at the trial, and further that the tax judgment is not essential to this
appeal.  

The summary
judgment evidence reflects that T&M intended to spend the excess funds
(more than $6,000) to redeem the property from UMLIC for the total amount of
$125,000.  We are not persuaded by
UMLIC's argument that T&M=s request for the release of the excess funds for
the expressed intended purpose of redeeming the property amounted to an
inconsistent position with regard to T&M's later trespass to try title
claim against LSS.  See Atkinson,
878 S.W.2d at 240. 








The nature of
UMLIC's purchase of the property from Gonzales is determinative.  UMLIC contends that a tax deed vests
"good and perfect title" in the purchaser or his assigns.  Tex.
Tax Code Ann. ' 34.01(n) (Vernon Supp. 2004-05).  UMLIC asserts that the special warranty deed
transferred good and perfect title to the property to UMLIC as an
"assignee" of Gonzales.  UMLIC
argues that it therefore obtained all the ownership interest Gonzales had in the
property, and its title was subject only to T&M's exercise of its right of
redemption.  This right of redemption had
to be exercised within 180 days after the day the tax deed was filed for
record.  See Tex. Tax
Code Ann. ' 34.21(e) (Vernon Supp. 2004-05).  UMLIC asserts that T&M's tender of the
redemption price on October 20, 2000, came too late for a valid redemption
because more than eight months had passed since the tax deed was filed of
record. 

T&M argues
that UMLIC redeemed the property from Gonzales for T&M, thereby placing the
parties in their positions previous to the tax sale.  The evidence shows that UMLIC purchased the
property from Gonzales within the period of 180 days as prescribed by the tax
code.  In correspondence from UMLIC to
Gonzales, UMLIC clearly asserted and relied upon its mortgagee‑mortgagor
relationship with T&M to establish its entitlement to redeem the property. 








We must construe
the statutory definition of "owner of real property" under section
34.21 of the tax code, which provides an owner of real property sold at a tax
sale with the right to redeem that property. 
See Tex. Tax Code
Ann. ' 34.21(e) (Vernon Supp. 2004-05).  In its correspondence to Gonzales, UMLIC
relied on Jackson v. Maddox, 117 S.W. 185, 185 (Tex. 1909), to justify
its status as the owner of the property for the purpose of redemption.  The Maddox court supported the
proposition that courts should "consider any person who has any interest
in lands sold for taxes as the owner thereof for the purposes of
redemption."  Id.  Maddox may be distinguished from the
case before us because the statute governing redemption then in effect allowed
for redemption by "the owner or anyone having an interest" in the
land.  In the current tax code section
34.21, the phrase of "owner of real property" is not followed by any
phrase similar to "any person who has an interest herein."  See Tex.
Tax Code Ann. ' 34.21(e) (Vernon Supp. 2004-05).  However, the statute does not specifically
provide that persons with an interest in the property cannot be
considered as the owner of the property. 
See id.

Noting the Texas
Supreme Court's trend toward a liberal construction of an "owner"
entitled to redeem the property, the Yarborough court held that the term
"owner" in section 34.21 of the tax code includes "any person
who has an ownership interest in the property."  See  Rogers v. Yarborough, 923 S.W.2d 667,
669-70 (Tex. App.BTyler 1996, no writ).  As a mortgagee with an interest in the
property, UMLIC also claimed its right to redemption.  We agree with the reasoning set forth in this
court's opinion in UMLIC VP LLC v. T&M Sales Environmental Systems,
Inc., No. 13-02-00634-CV, 2005 Tex. App. LEXIS 7623 (Tex. App.BCorpus Christi, Sept. 15, 2005).  Consistent with the liberal construction of
"owner of the property" by Texas courts, we conclude that the nature
of UMLIC's purchase of the property from Gonzales constituted a redemption
conducted by UMLIC, in its role as the mortgagee.  See Rogers, 923 S.W.2d. at 669-70.








In Reynolds v.
Batchelor, 216 S.W.2d 663, 667 (Tex. Civ. App.BFort Worth 1948, writ ref'd n.r.e.), our sister
court stated as a general principle that an owner who does not pay taxes should
not be allowed to strengthen his title at a tax sale.  Similarly, an owner who redeems his property
sold at a tax sale should not thereby strengthen his title against other owners
or lienholders.  See id.  A recent case further reiterates that
redemption merely relieves the property of the tax sale, and does not give new
title.  Assocs. Home Equity Servs. Co.
v. Hunt, 151 S.W.3d 559, 562 (Tex. App.BBeaumont
2004, no pet. h.).  When the owner of the
property or any person with an interest therein redeems the property, he
restores the title to whom it belonged before the tax sale, except the tax lien
has been discharged.  See id.  Thus, UMLIC's redemption did not extinguish
its mortgagee‑mortgagor relationship with T&M.  








Where the
mortgagee‑mortgagor relationship is still in existence, the mortgagee may
only obtain the superior title from the mortgagor (1) through proper
foreclosure, or (2) by a deed granted by the mortgagor in consideration of the
cancellation or release of the mortgage. 
See Littleton v. Littleton, 341 S.W.2d 484, 489 (Tex. Civ. App.BHouston 1960, writ ref'd n.r.e.).  The evidence shows that UMLIC redeemed the
property from the tax sale purchaser Gonzales for the benefit of the owner of
the property.  Then UMLIC declared itself
to be the successor in interest of the tax sale purchaser and claimed superior
title to the property.  However, the
owner of the property or any person with an interest that "undertakes to
purchase the tax title will be estopped to claim that he did anything other
than redeem the property from the tax sale."  See Batchelor, 216 S.W.2d at 667.  Therefore, once UMLIC undertook to redeem the
property subject to a tax sale, it was estopped from claiming that it purchased
the property from Gonzales as a successor in interest or assignee.  Hence, after UMLIC redeemed the property,
T&M was no longer subject to the 180‑day redemption period prescribed
by section 34.21(e) of the tax code.  See
Tex. Tax Code Ann. '
34.21(e) (Vernon Supp. 2004-05).  

We conclude that
UMLIC failed to establish as a matter of law that T&M=s trespass to try title claims are barred by the
doctrine of either collateral estoppel or quasi‑estoppel.  Accordingly, the summary judgment cannot be
sustained on the ground of estoppel.  

B.  T&M Is Statutorily Barred

T&M also
contends that summary judgment cannot be maintained based on UMLIC's third
ground, a statutory bar.  Since this
ground is closely related to our foregoing discussion of the estoppel ground,
we address it next. 








Under section
33.54 of the tax code, beginning from the date that the tax deed is filed of
record, the previous owner of the property subject to a tax sale has only one
year in which to file an action relating to the title to the property against
the purchaser of the property at a tax sale. 
See Tex. Tax Code
Ann. ' 33.54 (Vernon 2002).  Once the statutory bar is in effect, the
purchaser at the tax sale or the purchaser's successor in interest gains full
title to the property, precluding all other claims.  See id.  UMLIC relies on a San Antonio Court of Appeals
case, in which the court held that section 33.54 barred an untimely trespass to
try title suit by the former owner against the assignee of the purchaser at a
tax sale.  Cedillo v. Gaitan, 981
S.W.2d 388, 392 (Tex. App.BSan Antonio 1998, no pet.).  However, Cedillo is distinguishable
from the instant case because UMLIC redeemed the property from the purchaser as
an owner entitled to redeem under section 34.21 of the tax code.  Tex.
Tax Code Ann. ' 34.21(e) (Vernon Supp 2004-05).  As discussed above, because UMLIC redeemed the
property from Gonzales, the purchaser at the tax sale, UMLIC is not by
definition the assignee of the purchaser. 
UMLIC's conveyance of the property to LSS by general warranty does not
result in LSS being an assignee of the purchaser because UMLIC itself was not
the purchaser or assignee of the purchaser at the tax sale.  Therefore, T&M is not statutorily barred
from suing LSS for trespass to try title.  We conclude that this theory will not
support the summary judgment. 

C.  Election of Remedies

T&M also
contends that summary judgment cannot be sustained on UMLIC's final ground,
election of remedies.  Election of
remedies involves the act of choosing between two or more inconsistent but
coexistent modes of procedure and relief allowed by law on the same state of
facts.  Van Sickle v. Locke, 220
S.W.2d 919 (Tex. Civ. App.BDallas 1949, writ ref'd n.r.e.).








UMLIC argues that
because T&M filed suit against UMLIC for wrongful foreclosure and obtained
a judgment for money damages, it elected its remedy and is barred from bringing
this trespass to try title claim against LSS. 
UMLIC relies upon Durkey v. Madco Oil Co., Inc., 862 S.W.2d. 14
(Tex. App.BCorpus Christi 1993, writ denied) (op. on reh'g),
which provides that a party complaining about the wrongful foreclosure of
property is entitled to seek either the property or its value, but not
both.  In Durkey, the jury
answered affirmatively to the question of wrongful foreclosure, but granted
appellant Durkey zero value damages.  Id.
at 21.  On appeal, the appellant sought
only damages, and abandoned its earlier request for return of the
properties.  Id.  UMLIC also relies upon the following:  Owens v. Grimes, 539 S.W.2d 387, 390
(Tex. Civ. App.BTyler 1976, writ ref=d
n.r.e.) (holding that "once a party elects to let a sale stand and recover
at law for damages, he is forever barred from attacking the trustee's
deed."); Charter Nat=l BankBHouston v. Stevens, 781 S.W.2d 368, 374 (Tex. App.BHouston [14th Dist.] 1989, writ denied) (noting that
when the mortgagor elects damages as his remedy he confirms the act of sale and
he has no further interest in the property); Diversified, Inc. v. Gibraltar
Sav. Ass=n, 762
S.W.2d 620, 623 (Tex. App.BHouston [14th Dist.] 1988, writ denied) (holding
that a mortgagor who rescinded a foreclosure sale no longer had a cause of
action for damages for wrongful foreclosure and vice versa); Houston Sash
& Door Co. v. Davidson, 509 S.W.2d 690, 692 (Tex. Civ. App.BBeaumont 1974, writ ref=d n.r.e.) (holding that "plaintiff, having two
inconsistent remedies, only one of which could be granted, made his election;
and, having made the election, he is bound thereby."); Klien v. Garth,
677 S.W.2d 712, 717 (Tex. Civ. App.BTyler 1984, writ ref=d
n.r.e.) (stating that the trial court lacked the "power to award" a
money judgment, conditioned on the ability of the plaintiff to obtain clear
title to the property).  








Among other
arguments, T&M asserts that because the appeal in the prior wrongful
foreclosure lawsuit was still pending, that judgment was not final and
therefore could not amount to an election of remedies.  Street v. Hon. Second Court of Appeals,
756 S.W.2d 299, 301 (Tex. 1988). 
However, in the landmark case, Scurlock Oil Co. v. Smithwick, 724
S.W.2d 1, 17 (Tex. 1986), the Texas Supreme Court adopted the rule of the
Restatement (Second) of Judgments section 13, holding that a judgment is final
for the purposes of issue and claim preclusion despite the pendency of an
appeal unless the appeal actually consists of a trial de novo.  Id. 
We therefore reject any argument that a pending appeal in the prior
wrongful foreclosure judgment against UMLIC was sufficient in itself to
preclude that judgment from being either "final" or an election of
remedies.  

Under traditional
summary judgment review UMLIC, as movant, bears the burden of showing both no
genuine issue of material fact and entitlement to judgment as a matter of
law.  Tex.
R. Civ. P. 166a(c); Ortega,
97 W.S.3d at 771.  As an affirmative
defense, the election of remedies doctrine may constitute a bar to relief when
(1) one successfully exercises an informed choice, (2) between two or more
remedies, rights, or state of facts, (3) which are so inconsistent but
coexistent as to, (4) constitute manifest injustice.  Vanasek v. Underkofler, 50 S.W.3d 1,
10 (Tex. App.BDallas 1999, aff'd in part, rev'd in part on
other grounds, Underkofler v. Vanasek, 53 S.W.3d 343, 346 (Tex.
2001)); see also Locke, 220 S.W.2d at 921.  In order to establish the election of
remedies ground, UMLIC must establish all four elements.








With respect to
the first element of "informed choice," UMLIC seems to agree with
T&M's argument that Cameron County Court at Law No. 2 may not have
jurisdiction in trespass to try title cases.[8]  UMLIC responds that T&M still made an
informed choice, even assuming the county court's limited jurisdiction, because
T&M brought the wrongful foreclosure claim against UMLIC as a counterclaim
in a county court when it should have already known its available choice of
pursuing a trespass to try title action in a district court.  

The crucial
factor here is the sequence of events. 
UMLIC purchased the note on the property in fall 1999.  The school district foreclosed on the
property for failure to pay taxes in December 1999.  The tax sale occurred in February 2000, and
title transferred to Gonzales on February 11, 2000.  On June 6, 2000, UMLIC, holder of the note,
purchased the property back from Gonzales. 
On June 11, 2001, after having successfully evicted T&M, UMLIC filed
suit against T&M on the note secured by the property.  T&M then filed its counterclaims for
wrongful foreclosure and for money damages against UMLIC.  The lawsuit proceeded with T&M seeking
only money damages and never raising a claim for title.  UMLIC did not sell the property to LSS until
March 2, 2002.  On October 15, 2002,
T&M received its judgment in the wrongful foreclosure suit, by which it was
awarded the fair market value of the property. 
Then, in December 2002 T&M filed the underlying suit against LSS,
seeking to recover title to the property.  








We conclude that
T&M made an "informed choice" between two or more inconsistent
but coexistent remedies when it elected to sue UMLIC for money damages,
and not title to the property.  Van
Sickle v. Locke, 220 S.W.2d 919 at 921. 
More than nine months passed between the time suit was filed and the
time UMLIC sold the property, during which T&M could have raised claims for
title against UMLIC.  It did not do
so.  Whether or not T&M knew when
UMLIC sold the property to LSS is irrelevant to the fact that T&M had the
option to but never raised a claim for title during the time UMLIC did hold
title.  T&M does not become entitled
to raise the claim simply because title transfers to a third party, particularly
where, as here, T&M has already recovered the fair market value of the
property in issue.  See Durkey,
862 S.W.2d. at 21. 

Because the
summary judgment can be sustained on this ground, we overrule T&M's issue
on appeal challenging the granting of summary judgment in favor of LSS.

D.  LSS's Claims Were Derivative of T&M's
Claims against UMLIC

T&M asserts
in its second issue that the trial court erred in holding that LSS's claims for
trespass to try title were derivative of T&M's claims against UMLIC for
wrongful foreclosure.  T&M further
argues that LSS was not in privity with UMLIC for purposes of establishing the
defense of res judicata to T&M's claim against LSS.  As a result, this lack of privity precludes
LSS from asserting a defense that belongs to UMLIC.  To support this argument, T&M further
examines all three elements of res judicata to prove that UMLIC fails to
establish all of them.  








However, UMLIC
did not raise res judicata nor derivativeness as a ground in its motion for
summary judgment.  LSS simply urged that
the success of any claims against it were contingent upon the court's rulings
on UMLIC's motion for summary judgment. 
T&M addressed neither in its response to the motion for summary
judgment.[9]  In City of Houston v. Clear Creek Basin
Authority, 589 S.W.2d 671, 678 (Tex. 1979), the Texas Supreme Court held
that "the non-movant, however, may not raise any other issues as
grounds for reversal. . . . [T]he non-movant may
not urge on appeal as reason for reversal of the summary judgment any and every
new ground that he can think of, nor can he resurrect grounds that he
abandoned at the hearing."  
Therefore, relying on well-settled precedent, we overrule this issue on
appeal.   

V. 
Conclusion

Having overruled both issues on appeal, we affirm the judgment of the
trial court.  

ERRLINDA CASTILLO

Justice

 

                                                                                                                        
                         Memorandum Opinion
delivered and filed                                                             
this the 27th day of October, 2005.

 











[1] In the underlying suit, T&M
sued LSS for trespass to try title.  LSS
brought in UMLIC as a third party defendant. 
UMLIC brought in Pablo Gonzales ("Gonzales") as a third party
defendant.  UMLIC filed a summary
judgment motion against T&M as to T&M's claims against LSS.  LSS joined in that motion.  Gonzales did not join.  The trial court's summary judgment order
disposed of all claims and parties.  The
trial court found that UMLIC's motion had merit, and judgment was therefore
granted in favor of LSS.  The trial court's
order further dismissed all remaining claims, finding that LSS's claims against
UMLIC were derivative of T&M's claims against LSS, and that UMLIC's claims
against Gonzales were derivative of LSS's claims against UMLIC.  See part I.C of this opinion.  Three appellees are identified in this
appeal.  The principal brief was written
by UMLIC, and LSS adopted that brief in its entirety.  Gonzales's brief agrees with the judgment of
the trial court in all aspects, including its findings that claims against
Gonzales were properly dismissed. 
T&M raised no issues in this appeal contesting the trial court's
rulings as to claims against Gonzales.  





[2] Although T&M and UMLIC cannot
agree on the length of the statutory limitation period for filing a motion to
reinstate, UMLIC admitted in footnote 2 of its appellate brief that the motion
to reinstate the case was untimely even under the most liberal construction of
Texas rule of civil procedure 165a, in that "[a]t most, assuming the facts
most favorable to the SBISD, it would have had to have filed the motion within
120 days after the order dismissing the case for want of
prosecution."  See Tex. R. Civ. P. 165a.





[3] T&M and UMLIC never agreed to
the nature of this transaction.  While
T&M claimed that UMLIC redeemed the property from Pablo Gonzales, UMLIC did
not directly address this question but instead suggested that it was the
successor in interest of the purchaser at a tax sale.  However, we have taken judicial notice of a
letter addressed to Gonzales dated May 1, 2000, where UMLIC invoked section
34.21 of Texas Tax Code and asserted its right as an owner of real property
sold at a tax sale to redeem that property. 
Tex. Tax Code
Ann. ' 34.21 (Vernon Supp 2004-05).  UMLIC interpreted the term "owner"
in the statute as "all such persons who have any right, title, or interest
in the land."  See Jackson v.
Maddox, 117 S.W. 185, 185 (Tex. 1909). 
We also note that UMLIC paid Gonzales $12,500, representing the $10,000
paid by Gonzales at the tax sale and the 25% premium prescribed by the
law.  See Tex. Tax Code Ann.
' 34.21 (Vernon Supp. 2004-05).





[4] Three days later, on July 27,
2000, T&M informed UMLIC of its intent to withdraw the excess funds in the
registry of the court and to seek redemption of the property.  On July 31, 2000, T&M once again expressed
to UMLIC its intent to redeem the property and reinstate its mortgage agreement
with UMLIC.





[5] T&M continues to assert that
the tax judgment was void.  In its
appellate brief, however, it admitted that such a conclusion is not essential
to this appeal.





[6] In the jury trial below, the jury answered "no" to the
question whether T&M breached the terms of the note and answered
"yes" to the questions (1) whether UMLIC breached the terms of the
note, (2) UMLIC wrongfully foreclosed on the property, (3) UMLIC was negligent
for the injuries of T&M, and (4) UMLIC committed a fraud.





[7] See UMLIC VP LLC v. T&M Sales
Environmental Systems, Inc., No. 13-02-00634-CV, 2005 Tex. App. LEXIS 7623 (Tex. App.BCorpus Christi, Sept. 15, 2005).

 





[8] T&M asserts that jurisdiction
in trespass to try title actions lies exclusively in the district courts.  See Tex.
Const. art. V, ' 8; Tex. Gov't Code Ann. ' 24.007 (Vernon 2005).  It also contends that the Cameron County
Court at Law does not have jurisdiction over a dispute to quiet title to real
property.  See Tex. Gov't
Code Ann. ' 25.0332 (Vernon 2005).  As a result, T&M argues that it could not
make an "informed choice" because the county court at law could not
adjudicate the trespass to try title case.





[9] The record contains no motion for
new trial or comparable motion.