In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-06-089 CV


____________________



HENRY A. CANFIELD, Appellant



V.



WELLS FARGO BANK, N.A., Appellee






On Appeal from the 9th District Court


Montgomery County, Texas


Trial Cause No. 04-12-10030 CV






MEMORANDUM OPINION


 The issue we consider is whether Wells Fargo Bank, N.A. had a right to redeem real
property Henry A. Canfield purchased at a non-judicial tax foreclosure sale. (1) See Tex. Tax
Code Ann. § 32.06(i) (Vernon 2004). Canfield appeals the trial court's judgment in favor
of Wells Fargo. We affirm the judgment in part, and reverse and remand in part for a
determination of the proper redemption amount. 

 Sterling and Lisa Harra purchased real property in Montgomery County and financed
a loan for approximately $250,000 through Sebring Capital Corporation. The Harras
borrowed additional funds from Genesis Tax Loan Service, Inc. to pay delinquent ad valorem
taxes on the property. The note from Genesis required, among other things, the Harras to
execute a deed of trust additionally securing the payment of the Genesis note and providing
for judicial or non-judicial foreclosure if the Harras defaulted on the note. The deed of trust
stated that the Harras gave the deed of trust and the note for the purpose of transferring tax
liens in accordance with Tex. Tax Code § 32.06. 

 Wells Fargo Home Mortgage, Inc., Wells Fargo's predecessor, renewed and extended
the original purchase money loan after Genesis filed its deed of trust. The amount of the
renewed loan was $302,550.00. The Harras subsequently defaulted on the Genesis note. 
Genesis posted the property for non-judicial foreclosure. On September 7, 2004, a substitute
trustee sold the property to Canfield, the highest bidder, for $11,100.00. 

 Wells Fargo contacted Canfield to determine the amount of funds needed to redeem
the property pursuant to Tex. Tax Code Ann. § 32.06(i), but received no response as to a
redemption amount from Canfield. Instead, Canfield filed suit to obtain a declaratory
judgment that Wells Fargo had no right to redeem the property. Wells Fargo tendered funds
into the registry of the court in the amount of 118% of the purchase price, or $13,098.00. 
The trial court granted Wells Fargo's motion for summary judgment and entered a judgment
declaring that Wells Fargo redeemed the property. (2)
 

 Tex. Tax Code Ann. § 32.06, entitled "Transfer of Tax Lien," allows a person to
authorize another to pay real property taxes owed the taxing authority. Tex. Tax Code Ann.
§ 32.06. The party seeking to transfer the tax lien must file a "sworn document stating the
authorization, naming the other person authorized to pay the taxes, and describing the
property." Id. § 32.06(a). When the transferee pays the taxes, the tax collector certifies that
fact and that the tax lien has been transferred to the transferee. Id. § 32.06(b). To enforce
the transferred tax lien, the transferee must record the lien in all applicable county deed
records. Id. § 32.06(d). The tax lien transferee is entitled to foreclose the lien "in the manner
provided by law for foreclosure of tax liens," or "in the manner specified in Section 51.002,
Property Code." Id. § 32.06(c), see Tex. Prop. Code § 51.002 (Vernon Supp. 2006). 

 Generally, a tax lien takes priority over the claim of any lienholder on property
encumbered by the tax lien. Tex. Tax Code Ann. § 32.05(b) (Vernon 2004). "A purchaser
at a tax sale receives a conditional estate, which is subject to defeat upon 'compliance with
the redemption laws by those entitled to redeem.'" Assocs. Home Equity Servs. Co., 151
S.W.3d 559, 561 (Tex. App.--Beaumont 2004, no pet.) (citing Reynolds v. Batchelor, 216
S.W.2d 663, 666 (Tex. Civ. App.--Fort Worth 1948, writ ref'd n.r.e.); see also Tex. Tax
Code Ann. § 33.95 (Vernon 2004). 

 This dispute arises over the parties' different interpretations of Tex. Tax Code Ann.
§ 32.06(i) in effect at the time of the foreclosure sale. Subsection (i) addressed a property
owner's or first lienholder's right of redemption after a tax foreclosure sale as follows:

 (i) The person whose property is sold as provided by this section
or any person holding a first lien against the property is entitled,
within one year after the date the property is sold, to redeem the
property from the purchaser at the tax sale by paying that
purchaser the tax sale purchase price, plus costs, and interest
accrued on the judgment to the date of redemption or 118
percent of the amount of the judgment, whichever is less. If a
person redeems the property as provided by this subsection, the
purchaser at the tax sale shall deliver a deed to the property to
the person redeeming the property. If the person who owned the
property at the time of foreclosure redeems the property, all
liens existing on the property at the time of the tax sale remain
in effect to the extent not paid from the sale proceeds.


Tex. Tax Code Ann. § 32.06(i) (Vernon 2004). Canfield argues Wells Fargo had no right
to redeem under this version of section 32.06. (3) He contends, based on the statute's terms
"tax sale" and "judgment," that the subsection does not allow redemption following a non-judicial foreclosure. Wells Fargo argues that the statute, given a liberal interpretation
favoring rights of redemption as required under Texas law, provided a right of redemption
in both judicial and non-judicial foreclosures. 

 The goal of statutory construction is to ascertain and give effect to the Legislature's
intent. McIntyre v. Ramirez, 109 S.W.3d 741, 745 (Tex. 2003). If the statute is clear and
unambiguous, we must apply its words according to their common meaning without resort
to rules of construction or extrinsic aids. Fitzgerald v. Advanced Spine Fixation Sys., Inc.,
996 S.W.2d 864, 865-66 (Tex. 1999). In determining the Legislature's intent, we may
consider other matters, including the objective of the law, its history, laws on the same and
similar subjects, and the consequences of a particular construction. See Tex. Gov't Code
Ann. § 311.023(1),(3),(4), and (5) (Vernon 2005); See Union Bankers Ins. Co. v. Shelton,
889 S.W.2d 278, 280 (Tex. 1994). We consider a statute as a whole, not its provisions in
isolation. See Helena Chem. Co. v. Wilkins, 47 S.W.3d 486, 493 (Tex. 2001). Courts
liberally construe redemption statutes in favor of the right of redemption. See Rogers v.
Yarborough, 923 S.W.2d 667, 669 (Tex. App.--Tyler 1996, no writ); McGuire v. Bond, 271
S.W.2d 508, 511 (Tex. Civ. App.--El Paso 1954, writ ref'd n.r.e.); Jackson v. Maddox, 53
Tex. Civ. App. 478, 117 S.W. 185, 185 (1909, no writ). 

 In interpreting subsection (i), we must consider section 32.06 in its entirety. See
Helena Chem. Co., 47 S.W.3d at 493. Accepting Canfield's interpretation of section 32.06(i)
would ignore the plain language of the first clause of the subsection. See Tex. Tax Code
Ann. § 32.06(i). The first clause grants the right to redeem to "[t]he person whose property
is sold as provided by this section or any person holding a first lien against the property . .
. ." Id. Because section 32.06(c) provides for both judicial foreclosure and non-judicial
foreclosure as methods for foreclosure sales on a transferred tax lien, and because section
32.06(i) grants the redemption right for property sold as "provided by this section," we
understand section 32.06(i) to grant the right of redemption regardless of the sale method
used to foreclose the tax lien. As for the Legislature's use of the term "judgment," we
conclude the portions of the statute referencing a judgment apply only when a judgment was
in fact obtained. 

 Canfield further argues that if we determine Wells Fargo had a right to redeem, which
we have, the amount Wells Fargo tendered was insufficient to effectuate redemption. 
Canfield asserts the redemption amount should include $18,566.73 in costs he incurred after
purchasing the property, in addition to the $11,100.00 purchase price. He bases this
argument on a comparison of the amended versions of sections 32.06 and 34.21. Canfield
argues the Legislature amended section 32.06, which now provides for the property owner
or lienholder to redeem the property after paying 125% of the purchase price during the first
year after the sale or 150% of the purchase price during the second year after the sale, to
more coincide with the redemption provision in section 34.21. See Tex. Tax Code Ann. §
32.06(k) (Vernon Supp. 2006). Both the prior and amended Section 34.21 allow a
homeowner to redeem the property after a taxing unit foreclosure by paying the foreclosure
purchase amount, fees, taxes, penalties, interests and costs, and a redemption premium of
25% of the aggregate if paid in the first year of the redemption period or a redemption
premium of 50% of the aggregate if paid in the second year of the redemption period. See
Tex. Tax Code Ann. § 34.21(a) and (c) (Vernon 2004 & Vernon Supp. 2006). The amended
section 32.06 redemption provision does not account for costs, but Canfield argues this is
legislative "oversight." See id. § 32.06(k). He contends if we construe section 32.06(i) to
apply to non-judicial foreclosures, we should require Wells Fargo to pay Canfield 118% of
the aggregate of the purchase price he paid and costs he incurred. 

 The redemption amount to be paid the purchaser under the applicable section 32.06(i)
was "the tax sale purchase price, plus costs, and interest accrued on the judgment to the date
of redemption or 118 percent of the amount of the judgment, whichever is less." Tex. Tax
Code Ann. § 32.06(i) (Vernon 2004). Canfield argues there is no "judgment," and therefore,
no redemption amount can be determined. We read the statute differently. The portions of
section 32.06(i) allowing for "interest accrued on the judgment to the date of redemption"
and the cap of "118 percent of the amount of the judgment" cannot apply where no judgment
exists. If no judgment was entered because the sale was pursuant to Tex. Prop. Code Ann.
§ 51.002, the amount necessary for redemption is the tax sale purchase price "plus costs." 
See § 32.06(i). 

 Section 32.06 does not define "costs." Section 34.21, which requires an owner to pay
certain costs as part of the redemption amount after a tax foreclosure sale by a taxing entity,
includes the following as "costs":

 (A) the amount reasonably spent by the purchaser for maintaining, preserving,
and safekeeping the property, including the cost of:

 (i) property insurance; 

 (ii) repairs or improvements required by a local ordinance or building
code or by a lease of the property in effect on the date of the sale; 

 (iii) discharging a lien imposed by a municipality to secure expenses
incurred by the municipality in remedying a health or safety hazard on
the property; 

 (iv) dues or assessments for maintenance paid to a property owners'
association under a recorded restrictive covenant to which the property
is subject; and 

 (v) impact or standby fees imposed under the Local Government Code
or Water Code and paid to a political subdivision . . . . 


Tex. Tax Code Ann. 34.21(g)(2)(A) (Vernon 2004). Because the Legislature defined
"costs" in a similar context with respect to redemption rights, we apply the same definition
of "costs" here. See Tex. Gov't Code Ann. § 311.023(4). Canfield is entitled to the
$11,100 tax sale purchase price plus the amount reasonably spent for maintaining,
preserving, and safekeeping the property. 


 Canfield also contends Wells Fargo's deposit into the registry of the court is not a
proper tender of payment for redemption purposes. Wells Fargo requested from Canfield the
amount of funds necessary for redemption. Section 32.06(i) does not provide a specific
procedure for tendering the redemption amount. See Tex. Tax Code Ann. § 32.06(i). We
look again to an analagous procedure provided for in section 34.21 for guidance on
legislative intent. See Tex. Tax Code Ann. § 34.21(i); Tex. Gov't Code Ann. §
311.023(4). Pursuant to section 34.21(i), an owner attempting to redeem after a tax
foreclosure sale may make a written request to the purchaser for a written itemization of all
amounts spent by the purchaser in costs. See Tex. Tax Code Ann. § 34.21(i). Wells Fargo
acted similarly in requesting from Canfield the amount necessary for redemption. Section
34.21(i) provides that "[o]nly those amounts included in the itemization provided to the
owner may be allowed as costs for purposes of redemption." See Tex. Tax Code Ann.
34.21(i). If the owner and purchaser cannot agree on a redemption amount or the purchaser
refuses to give the owner a quitclaim deed to the property, the owner may redeem the land
by paying "the required amount" to the assessor-collector for the county in which the
property described has been redeemed; "on demand" the assessor-collector then pays the
amount to the purchaser. See Tex. Tax Code Ann. § 34.21(f). These provisions are not
directly applicable here, but we believe the Legislature intended the right of redemption
under section 32.06(i) to be exercised in a reasonably similar manner. 

 Under the circumstances presented, Wells Fargo's deposit of 118% of the tax sale
purchase price protected its right to redeem the property, although the amount of the tender
was in fact insufficient. We hold Canfield is entitled to the tax sale purchase price of
$11,100.00, plus the amount he incurred that was reasonably spent for maintaining,
preserving, and safekeeping the property.

 The trial court's order granting Wells Fargo's motion for summary judgment is
affirmed as to the court's declaratory judgment that Wells Fargo has a right to redeem. The
judgment is reversed as to the redemption amount. The cause is remanded to the trial court
for a determination of the proper redemption amount and for further proceedings consistent
with this opinion.

 AFFIRMED IN PART; REVERSED AND REMANDED IN PART.

 

 _________________________________

 DAVID GAULTNEY

 Justice


Submitted on July 6, 2006

Opinion Delivered September 28, 2006


Before McKeithen, C.J., Gaultney and Horton, JJ.
1. Unless otherwise noted, any references to the Texas Tax Code are references to the
version in effect at the time of the foreclosure. 
2. We review a trial court's summary judgment de novo. Valence Operating Co. v.
Dorsett, 164 S.W.3d 656, 661 (Tex. 2005). In a traditional summary judgment case, the
issue on appeal is whether the movant met the summary judgment burden by establishing that
no genuine issue of material fact exists and that the movant is entitled to judgment as a matter
of law. Tex. R. Civ. P. 166a(c); Sw. Elec. Power Co. v. Grant, 73 S.W.3d 211, 215 (Tex.
2002). "When reviewing a summary judgment, we take as true all evidence favorable to the
nonmovant, and we indulge every reasonable inference and resolve any doubts in the
nonmovant's favor." Valence Operating Co., 164 S.W.3d at 661.

3. Canfield acknowledges the amended version of section 32.06 grants a right of
redemption to the owner or any lienholder of record in both judicial and non-judicial
foreclosure sales. See Tex. Tax Code Ann. § 32.06(i),(k) (Vernon Supp. 2006).